975 F.2d 964
 59 Fair Empl.Prac.Cas. (BNA) 1384,
59 Empl. Prac. Dec. P 41,753, 23 Fed.R.Serv.3d 905
 Jules LUSARDI; Walter N. Hill; James Marr, Jr.; and John
F. Weiss, individually, and on behalf of all other persons
similarly situated; Arthur Brickman; Martin J. Cocca;
Carl B. Heisler; Raymond C. Loyer; Donald P. Miller;
Robert C. Patterson; Anthony T. Salvatore; Eldon Sheldon;
Michael Sylvestri, individually, and on behalf of all other
persons similarly situated
v.
XEROX CORPORATION, A New York Corporation, Jules Lusardi,
Walter N. Hill, James Marr, Jr., John F. Weiss, Arthur
Brickman, Martin J. Cocca, Carl B. Heisler, Raymond C.
Loyer, Donald P. Miller, Robert C. Patterson, Anthony T.
Salvatore, Eldon Sheldon, Michael Sylvestri, Bruce A.
Blackie, Richard Vinson, Edward Brough, and Charles L.
Meador, Appellants No. 91-5846.
Jules LUSARDI; Walter N. Hill; James Marr, Jr.; and John
F. Weiss, individually, and on behalf of all other persons
similarly situated; Arthur Brickman; Martin J. Cocca;
Carl B. Heisler; Raymond C. Loyer; Donald P. Miller;
Robert C. Patterson; Anthony T. Salvatore; Eldon Sheldon;
Michael Sylvestri, individually, and on behalf of all other
persons similarly situated
v.
XEROX CORPORATION, A New York Corporation, Appellant No. 91-5890.
 Nos. 91-5846, 91-5890.
 United States Court of Appeals,
Third Circuit.
 Argued June 19, 1992.
Decided Sept. 16, 1992.
 
 1
 Robert L. Deitz (argued), Perkins Coie, Washington, D.C., Robert H. Jaffe, Jaffe & Schlesinger, Springfield, N.J., Alan S. Weitz, Ginsburg, Feldman & Bress, Washington, D.C., for appellants cross appellees.
 
 
 2
 Carmine A. Iannaccone (argued), Hannoch Weisman, Roseland, N.J., for appellee cross appellant.
 
 
 3
 Before: GREENBERG and NYGAARD, Circuit Judges and POLLAK, District Judge.*
 
 OPINION OF THE COURT
 
 4
 LOUIS H. POLLAK, District Judge.
 
 
 5
 This appeal presents the question whether a trial court has jurisdiction to entertain a motion for class certification brought by putative class representatives who have previously settled their individual claims. The district court decided that there was no longer a live "case or controversy" and dismissed the class certification motion as moot. Because we conclude that the district court correctly determined that it lacked jurisdiction to address the merits of the class certification issue once there was neither a plaintiff nor a class, we affirm.I
 
 
 6
 This age discrimination case, filed in the District Court for the District of New Jersey more than nine years ago, is, from a procedural perspective, a cautionary tale. It has been assigned to three different district court judges and has twice been addressed here. As this case comes to this court for the third time, some irony attaches to efforts to breathe new life into age discrimination claims that are so old.
 
 
 7
 On March 8, 1983, Jules Lusardi and three other former employees filed a class action against the Xerox Corporation ("Xerox"), alleging violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634 (1985). An amended complaint, filed March 24, 1983, claimed that between 1980 and 1983 Xerox engaged in a nationwide policy and practice of targeting older salaried workers for workforce reductions to create openings for younger employees.[1] Plaintiffs sought certification of a class consisting of various former, present and future salaried employees of Xerox. On August 31, 1983, Judge Stern refused to allow a Rule 23(b)(2), Fed.R.Civ.P., class action, but ordered that he would conditionally certify an opt-in class under § 7(b) of the ADEA upon the filing of a second amended complaint.[2] The second amended class action complaint, filed October 6, 1983, added nine additional named plaintiffs, making a total of thirteen.
 
 
 8
 On January 31, 1984, Judge Stern conditionally certified an ADEA class including Xerox salaried employees in the 40-70 age group "who in the period May 1, 1980 through March 31, 1983 have been terminated or required to retire from employment at an age less than seventy...." App. at 94. (The January 31, 1984 order followed from an opinion filed by Judge Stern in August, 1983. See Lusardi v. Xerox Corp., 99 F.R.D. 89 (D.N.J.1983)). The conditional certification was entered without prejudice to the respective parties' rights to move for decertification of the class. On February 1, 1984, Xerox appealed Judge Stern's order and petitioned for a writ of mandamus. This court denied Xerox's petition for mandamus and, thereafter, dismissed the appeal for lack of jurisdiction, concluding that a conditional certification order was not a properly appealable final judgment or "collateral order". See Lusardi v. Xerox Corp., 747 F.2d 174 (3d Cir.1984).
 
 
 9
 Following the dismissal of the appeal, the named plaintiffs sent notices of the litigation to more than 23,500 past and present Xerox employees, 1,312 of whom elected to join the conditionally certified class. From those 1,312, the parties agreed to choose a random fifty-one conditional class members to determine whether the opt-ins were "similarly situated" to the thirteen named plaintiffs within the meaning of 29 U.S.C. § 216(b), as incorporated by 29 U.S.C. § 626(b). Upon completion of discovery on class action issues, Xerox moved to decertify the class; at about the same time, the case was reassigned to Judge Lechner. Judge Lechner granted Xerox's motion to decertify the class on the ground that the members of the proposed class were not similarly situated.[3] See Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J.1987).
 
 
 10
 Plaintiffs appealed Judge Lechner's decertification order and petitioned for a writ of mandamus. This court dismissed plaintiffs' appeal as interlocutory, but granted plaintiffs' petition for a writ of mandamus, directing the district court to vacate its holding insofar as it purported to require an individual to file timely age discrimination charges with the EEOC before joining the class action. See Lusardi v. Lechner, 855 F.2d 1062 (3d Cir.1988). On remand, Judge Lechner noted that the portion of his prior opinion dealing with administrative filing requirements was "not a key element in [his] reasoning", and concluded once again that the opt-ins were not similarly situated and the class should be decertified. See Lusardi v. Xerox Corp., 122 F.R.D. 463, 464 (D.N.J.1988). A notice of decertification was sent out to the former members of the conditional class informing them that their consents to join the action had been revoked and that they were no longer members of the class and could pursue their claims as individuals.
 
 
 11
 Following Judge Lechner's second order decertifying the class, Xerox requested that Judge Politan--to whom the case had meanwhile been reassigned[4]--sever the individual claims of the named plaintiffs and order separate trials or, alternatively, consolidate the claims for the limited purpose of trying the common allegation of a corporate practice of age discrimination. On April 24, 1989, Magistrate Judge Hedges, to whom Judge Politan had referred the case, ordered a consolidated trial on the issue of corporate policy and separate trials on the thirteen individual claims.[5]
 
 
 12
 After lengthy settlement negotiations, the parties entered into a Memorandum of Understanding (MOU) in December 1990, in which the named plaintiffs agreed to a "full and unconditional General release of all claims in the Action, Covenant not to Sue, and Stipulation of Confidentiality.... relating to settlement of all individual claims in the Action, including any such individual claims based upon an allegation of a pattern or practice of age discrimination." App. at 1932. With regard to the certification issue, the MOU stated:
 
 
 13
 [T]he parties acknowledge that it is the plaintiffs' intention to make application to the Court as putative class representatives, for a hearing seeking recertification of a class. Xerox, however, makes no representations or warranties and takes no position as to the merits of plaintiffs' standing or legal entitlement to continue to act as putative class representatives. Plaintiffs expressly assume all risks and responsibilities associated with their intention to continue to act as putative class representatives and any failure of plaintiffs to perfect their standing to assert class claims shall not vitiate this agreement.
 
 
 14
 App. at 1931. The MOU further provided on this issue:
 
 
 15
 7. Xerox agrees that it will not assert that the within settlement is a bar to plaintiffs' attempt to move for recertification or to seek an intervenor for class certification.
 
 
 16
 8. Xerox agrees that it will not invoke the law of the case doctrine or otherwise argue that the findings and decisions of the Honorable Alfred E. Lechner ... bar or otherwise preclude the Court from considering, and ruling upon an application by plaintiffs to recertify a class.
 
 
 17
 9. Nothing in this Memorandum, however, shall be deemed to constitute a waiver of any objection or defense by Xerox Corporation as to the propriety or sufficiency of any proposed class or any other representative action or of plaintiffs' right or ability to maintain a class or any other representative action.
 
 
 18
 App. at 1933-1934.
 
 
 19
 Pursuant to the terms of the MOU, the parties then executed the "General Release, Covenant Not to Sue, and Stipulation of Confidentiality" ("the Agreement"). In the Agreement, the named plaintiffs released Xerox of liability for any individual claims in that case, and each plaintiffreserve[d] [his or her] right to act as a class representative upon the express understanding that any relief secured by any such class shall not obligate Xerox to pay me or my attorneys any additional sums relating to claims under this Release beyond those paid to me and my attorneys pursuant to this settlement.
 
 
 20
 App. at 1941. The Agreement continued "I fully understand that Xerox takes no position as to my ability to continue to act as a class representative after the execution of this Release, but Xerox will not oppose my standing on the basis of this Release." App. at 1941.
 
 
 21
 At a hearing conducted on December 18, 1990, the parties asked Judge Politan to execute the MOU and place it in the record under seal. Judge Politan agreed to do so, adding that it was his "understanding that after this is over that we still have remaining the question of whether or not there should be a class certification in this case and that both parties want to me hold ... in essence a de novo hearing, on the issue of class certification." App. at 1946. Judge Politan noted that although Judge Lechner had previously ruled on class certification,
 
 
 22
 it is understood that Judge Lechner's ruling is not binding upon me as either law of the case, precedent or anything of that nature, but that both parties are free to use such information as came out of that prior proceeding or proceedings as they choose in support of or in defense of their respective positions in the matter. In other words, I would be like a criminal defendant. I would start off with a clean slate.
 
 
 23
 App. at 1947. On February 8, 1991--the district court entered a Stipulation and Order, dismissing all of the individual claims of the named plaintiffs. App. at 1949-50.
 
 
 24
 On March 29, 1991, the plaintiffs filed a de novo motion to certify four subclasses. Xerox opposed the motion, arguing, inter alia, first, that the court lacked procedural authority to certify four previously unidentified subclasses, and, second, that the dismissal of the plaintiffs' individual claims deprived the district court of jurisdiction to address the merits of class recertification. Plaintiffs, in turn, filed an amended motion requesting the court to vacate its February 8th dismissal "as improvidently entered." Notwithstanding that they had stipulated to the entry of the February 8th dismissal, plaintiffs contended that it should be replaced with an order dismissing the individual damage claims of the named plaintiffs and declaring "that they have maintained a personal stake in the controversy sufficient to satisfy Article III Constitutional 'case or controversy' requirements." App. at 1978.
 
 
 25
 On July 15, the district court held a hearing on these motions, and, on August 13th, the court issued a letter opinion dismissing the class action claims as moot and dismissing the case in its entirety because "there no longer remains a live 'case or controversy' within the meaning of Article III of the Constitution."[6] App. at 2038. Judge Politan noted that an order dismissing the class action claims as moot should have been entered as soon as the individual claims were settled. Because such an order had not been entered on February 8, 1991, Judge Politan announced that the time to appeal Judge Lechner's second decertification order would begin to run upon entry of his August 13th letter opinion on the docket (i.e. on August 15, 1991).
 
 
 26
 Plaintiffs filed a motion for reconsideration under Rule 59(e) on August 26, 1991. At the same time, plaintiffs requested the court to allow four prospective intervenors from the putative class to file a complaint-in-intervention. In a September 30th letter opinion, the district court reiterated that it did not have subject matter jurisdiction to consider the merits of plaintiffs' motion to certify subclasses and denied the motion for intervention because, among other reasons, "there is no live case or controversy into which the applicants may intervene." App. 2085-86.
 
 
 27
 On October 16, 1991, the named plaintiffs filed a notice of appeal from Judge Politan's September 30th order.II
 
 
 28
 At oral argument, appellants presented their two preferred outcomes to this appeal: reversal of Judge Politan's ruling that the class action claims were moot or reversal of Judge Lechner's 1988 decertification order. Because of alleged defects in the notice of appeal, we must decide, as an initial matter, whether we have jurisdiction to review Judge Lechner's order.[7]
 
 
 29
 In his August 13th letter opinion, Judge Politan informed the named plaintiffs that, although he was dismissing their motion to certify as moot, they could appeal Judge Lechner's 1988 decertification order. Apparently disregarding this invitation, appellants filed a notice of appeal which reads as follows:
 
 
 30
 Please take notice that the plaintiffs ... as well as the proposed plaintiffs-intervenors ... hereby appeal to the United States Courts of Appeals for the Third Circuit from an opinion and order dated September 30, 1991 of District Judge Nicholas H. Politan denying a motion of the named plaintiffs filed pursuant to Rule 59(e) of the Federal Rules of Procedure seeking to alter or amend an August 13, 1991 opinion and order constituting a final judgment dismissing all class action claims asserted by the named plaintiffs and denying a supplemental motion of the proposed plaintiffs-intervenors for leave of court to file a complaint in intervention.
 
 
 31
 App. at 2088-89. The notice of appeal does not mention the June 1988 decertification order.
 
 
 32
 Because of an ambiguously worded question in appellants' Civil Information Statement,[8] Xerox realized that appellants might actually be challenging the Lechner order and moved to dismiss that portion of the appeal as untimely filed.[9] In response to Xerox's partial motion to dismiss, appellants stressed that "[i]t is the denial by Judge Politan of the plaintiffs' motion for recertification ... that is the subject of the instant appeal." Appellants' Brief in Opp. to Motion to Dismiss at 5. Similarly, appellants' initial brief makes clear that they were "appeal[ing] from the August 15, 1991 final judgment rendered by Judge Politan [i.e. the August 13th letter opinion docketed on August 15, 1991] rather than the October 21, 1988 decertification order of Judge Lechner ...").[10] Appellants' Brief in Sup. at 27 (emphasis added). Only in later submissions did appellants express an oblique intention to challenge Judge Lechner's conclusions to the extent that they were "discussed and adopted" by Judge Politan in his opinions. Appellants' Reply Brief and Response to Cross Appeal at 20. Still, appellants maintained that they were appealing Judge Politan's orders. See id. at 16-7 ("[we] clearly identified as the basis for ... appeal the August 13, 1991 opinion and order of Judge Politan ... [and] the district court's September 30, 1991 opinion and order denying the plaintiffs' Rule 59(e) reconsideration motion ...") Therefore, appellants never purported to be appealing Judge Lechner's second decertification order.[11]
 
 
 33
 Federal Rule of Appellate Procedure 3(c) states that "[t]he notice of appeal shall ... designate the judgment, order or part thereof appealed from." Xerox argues that this rule precludes us from reviewing Judge Lechner's order due to appellants' failure to specify this order in their notice of appeal and their repeated representations that they were not appealing that order. We agree.
 
 
 34
 In trying to avoid the swath of Rule 3(c), appellants rely upon our liberal construction of notices of appeal. See Drinkwater v. Union Carbide Corp., 904 F.2d 853, 858 (3d Cir.1990). Specifically, they argue that the simple description of Judge Politan's August 13th opinion as "constituting a final judgment dismissing all class action claims" effectively drew into question all prior non-final orders. Appellants' Reply Brief at 16. In support of this proposition, they rely on the suggested form for a notice of appeal set out in the Appendix of Forms to the Federal Rules of Appellate Procedure, which allows an appeal simply from "the final judgment," identifying it only by date.[12] However, appellants did not appeal generally from "the final judgment" on the class claims. Rather, appellants stated that they were appealing from an opinion and order of Judge Politan which declined to amend an earlier opinion and order of Judge Politan.[13] Having referred specifically to those two district court orders, appellants had the responsibility to designate any separate orders that they sought review of:
 
 
 35
 When an appeal is taken from a specified judgment only or from a part of a specified judgment, the court of appeals acquires thereby no jurisdiction to review other judgments or portions thereof not so specified or otherwise fairly to be inferred from the notice as intended to be presented for review on the appeal.
 
 
 36
 Elfman Motors, Inc. v. Chrysler Corp., 567 F.2d 1252, 1254 (3d Cir.1977).
 
 
 37
 Recently, we translated the standard into a three-pronged test, under which it is proper to exercise appellate jurisdiction over unspecified prior orders only if
 
 
 38
 there is a connection between the specified and unspecified order, the intention to appeal the unspecified order is apparent and the opposing party is not prejudiced and has a full opportunity to brief the issues.
 
 
 39
 Williams v. Guzzardi, 875 F.2d 46, 49 (3d Cir.1989). None of these factors is present here.
 
 
 40
 Where a connection between the unspecified and specified orders has been found, the link has been clear and direct. See, e.g., Matute v. Procoast Navigation, Ltd., 928 F.2d 627, 629 (3d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 329, 116 L.Ed.2d 270 (1991) (appealing from order denying motion for reconsideration gives notice of intent to appeal underlying order of dismissal); Drinkwater, 904 F.2d at 858 (reviewing unspecified summary judgment order only insofar as it included a claim that was "inextricably meshed" with claim in the specified summary judgment order); Williams, 875 F.2d at 50 (denial of directed verdict "underlies" the specified final judgment notwithstanding the verdict); United States v. Certain Land in the City of Paterson, N.J., 322 F.2d 866, 869 (3d Cir.1963) (order denying motion to amend prior order includes the prior order); see also Foman v. Davis, 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962) (denial of motion to vacate judgment and amend complaint and denial of prior judgment dismissing complaint). In each of these cases, the specified order either was predicated upon the unspecified order or raised intertwined issues that could not be decided without assessment of the unspecified order.[14]
 
 
 41
 In this case, Judge Politan's order denying class certification only depends on Judge Lechner's earlier order if we accept one of appellants' theories, cast in the alternative, that (1) Judge Politan "discussed and adopted" Judge Lechner's decertification order, Appellants' Reply Brief at 20, or (2) "had [Judge Politan] conducted the de novo class certification hearing contemplated by the MOU, the district court would have adopted Judge Lechner's conclusions." Appellants' Brief in Sup. at 27. Judge Politan never reached the merits of class certification, much less adopted Judge Lechner's conclusions on that issue. Judge Politan's August 13th letter opinion reads, "Since I find that there no longer exists a live case or controversy within the meaning of Article III of the Constitution, I will not rule on the merits of the motion to recertify the class." App. at 2042 (emphasis added). Moreover, any counterfactual speculation about what conclusions Judge Politan might have reached had he conducted a de novo hearing is insufficient to constitute genuine interdependence.[15] Finally, Judge Politan's jurisdictional determination was only in the most remote sense based on the earlier decertification ruling. Judge Politan might not have dismissed the class action as moot had Judge Lechner not previously decertified the class; however, one could with equal force contend that Judge Lechner would not have dismissed the claims but for Judge Stern's denial of Rule 23 certification back in 1983, but it would strain credulity to argue that the 1983 order, too, was incorporated in appellants' notice of appeal.
 
 
 42
 Second, the intention to appeal Judge Lechner's order was hardly "apparent". Aside from an explicit recital that they were not appealing the 1988 order, appellants' general presentation indicated that they did not intend this court to review the validity of Judge Lechner's decertification order. Appellate review of class certification determinations is normally limited to whether the district court abused its discretion in denying the motion, see Weiss v. York Hosp., 745 F.2d 786, 807 n. 33 (3d Cir.1984), cert. denied, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985); Bogus v. American Speech & Hearing Ass'n, 582 F.2d 277, 289 (3d Cir.1978); however, appellants have made no serious attempt to recreate the record that was actually before Judge Lechner when he decertified the class. Nor did their original brief discuss the abuse of discretion standard of review with respect to Judge Lechner's ruling. Indeed, while Judge Politan's letter opinions were attached as exhibits to appellants' initial brief, appellants did not include excerpts from the transcript of proceedings before Judge Lechner or Judge Lechner's 1988 decertification order until more than two months later, in their Supplemental Appendix. Moreover, appellants repeatedly urged this court to mandate certification of four subclasses, relief that was never formally requested from Judge Lechner.
 
 
 43
 Xerox in its submissions on this appeal has not undertaken to defend Judge Lechner's order. Given the clarity of appellants' representation that they were not appealing Judge Lechner's order and appellants' failure to provide this court with a record sufficient to make a judgment on Judge Lechner's decertification order, there was no evident reason to brief that issue. Therefore, prejudice to appellee is likely to result if review is granted of an order that was not designated in the notice of appeal, and we hold that Rule 3(c) of the appellate rules bars us from reviewing Judge Lechner's order.
 
 
 44
 Accordingly, the only issues properly before us are whether the district court erred in concluding that it lacked subject matter jurisdiction over the motion for class certification, and whether the district court abused its discretion in denying the motion for leave to file a complaint in intervention on behalf of four members of the putative class.
 
 III
 
 45
 The district court decided that because the named plaintiffs settled their individual claims when no class certification motion was pending, there ceased to be a live "case or controversy". The standard of review for determining whether the district court properly dismissed as moot appellants' motion to certify the class is plenary. CNA Ins. Cos. v. Waters, 926 F.2d 247, 250 (3d Cir.1991); EEOC v. Metal Service Co., 892 F.2d 341, 346 (3d Cir.1990); Wilkerson v. Bowen, 828 F.2d 117, 119 (3d Cir.1987); International Bhd. of Boilermakers v. Kelly, 815 F.2d 912, 914 (3d Cir.1987).
 
 
 46
 The federal "judicial power" extends only to "Cases" or "Controversies". U.S. Const. art III, § 2. The "case or controversy" requirement demands that a cause of action before a federal court present a "justiciable" controversy, and "no justiciable controversy is presented ... when the question sought to be adjudicated has been mooted by subsequent developments...." Flast v. Cohen, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968). Article III requires that a plaintiff's claim be live not just when he first brings the suit but throughout the entire litigation, and once the controversy ceases to exist the court must dismiss the case for lack of jurisdiction. See, e.g., Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40, 57 S.Ct. 461, 463-64, 81 L.Ed. 617 (1937); Deposit Guaranty Nat'l Bank, etc. v. Roper, 445 U.S. 326, 335, 100 S.Ct. 1166, 1172, 63 L.Ed.2d 427 (1980) ("[T]he definitive mootness of a case or controversy ... ousts the jurisdiction of the federal courts and requires dismissal of the case....") Neither spirited advocacy, see Kremens v. Bartley, 431 U.S. 119, 134 n. 15, 97 S.Ct. 1709, 1717 n. 15, 52 L.Ed.2d 184 (1977), nor agreement between the parties to allow the federal court to hear the case, see Sosna v. Iowa, 419 U.S. 393, 398, 95 S.Ct. 553, 556, 42 L.Ed.2d 532 (1975); Mitchell v. Maurer, 293 U.S. 237, 243, 55 S.Ct. 162, 164, 79 L.Ed. 338 (1934), will rescue a mooted action.[16]
 
 
 47
 Settlement of a plaintiff's claims moots an action. See Lake Coal Co. v. Roberts & Schaefer Co., 474 U.S. 120, 106 S.Ct. 553, 88 L.Ed.2d 418 (1985); Hammond Clock Co. v. Schiff, 293 U.S. 529, 55 S.Ct. 146, 79 L.Ed. 639 (1934); 13A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure, § 3533.2, at 233 (1984). However, special mootness rules apply in the class action context, where the named plaintiff purports to represent an interest that extends beyond his own. Once a class has been certified, mooting of the class representative's claims does not moot the entire action because the class "acquire[s] a legal status separate from the interest asserted [by its named plaintiff]." Sosna, 419 U.S. at 399, 95 S.Ct. at 557 (case challenging constitutionality of state divorce law's durational requirement brought on behalf of properly certified class not mooted by named plaintiff's satisfaction of the residency requirement). Litigation may continue because the stake of other class members is attributed to the class representative.
 
 
 48
 A different general rule operates when a class has yet to be certified. Normally, when claims of the named plaintiffs become moot before class certification, dismissal of the action is required. See, e.g., Kremens, 431 U.S. at 132-33, 97 S.Ct. at 1716-17; East Texas Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975); Board of Sch. Comm'rs of City of Indianapolis v. Jacobs, 420 U.S. 128, 129, 95 S.Ct. 848, 849, 43 L.Ed.2d 74 (1975) (per curiam); O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974); Bailey v. Patterson, 369 U.S. 31, 32-33, 82 S.Ct. 549, 550-51, 7 L.Ed.2d 512 (1962); Rocky v. King, 900 F.2d 864, 869 (5th Cir.1990); Wilson v. Secretary of Health & Human Servs., 671 F.2d 673, 679 (1st Cir.1982); Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030, 1041 (5th Cir.1981). In such a situation, "there is no plaintiff (either named or unnamed) who can assert a justiciable claim against any defendant and consequently there is no longer a 'case or controversy' within the meaning of Article III of the Constitution." Zeidman, 651 F.2d at 1041.
 
 
 49
 Appellants do not so much dispute this general rule as they try in multifarious ways to bring themselves outside of it. Nevertheless, a named plaintiff whose individual claim has expired may continue in his representative capacity to litigate class certification issues only for two limited purposes: (1) to argue a certification motion that was filed before his claims expired and which the district court did not have a reasonable opportunity to decide; and (2) to appeal a denial of a class certification motion presented when his claims were live. These exceptions to the general mootness rule are intended to ensure proper resolution of any certification motion filed at a time when the named plaintiff's own claims were still in issue. The situation at bar--where plaintiffs filed a new motion to certify four subclasses after their individual claims were mooted--does not fit within either of these two narrow exceptions to the general mootness rules.
 
 
 50
 We first address the exception covering instances where a named plaintiff whose individual claims have expired seeks appellate review of a denial of class certification.
 
 
 51
 1. The Geraghty/Roper Exception for Appeal of Denial of Class Certification
 
 
 52
 In twin decisions in 1980, United States Parole Comm'n v. Geraghty, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), and Deposit Guaranty Nat'l Bank, etc. v. Roper, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), the Supreme Court cut away at the margins of the long-standing rule that an action is moot if lacking both a named plaintiff with a justiciable private claim and a certified class. These cases allowed a named plaintiff whose individual claims were mooted to appeal a previous denial of class certification. Appellants rely heavily on Geraghty and Roper; however in several major respects this case differs. Most obviously, the named plaintiffs did not seek to appeal from denial of a class certification but attempted to obtain a new ruling on the class certification issue by the district judge to whom the case had been reassigned.[17]
 
 A. The Geraghty Rule
 
 53
 Geraghty, a case arising in this circuit, involved a prisoner who had been denied parole and filed a class action challenging the federal parole guidelines. The district court refused to certify the class and ruled against Geraghty on the merits of his individual claim. During his appeal of both issues to this court, Geraghty was released from prison, thus mooting his individual claim. Nonetheless, this court concluded that the class litigation was still live, reversed the denial of class certification, and remanded to the district court to evaluate the possibility of creating subclasses. The Supreme Court affirmed.
 
 
 54
 The Court looked beyond the mootness of Geraghty's substantive claims and focused instead on his wholly separate "procedural ... right to represent a class...." 445 U.S. at 402, 100 S.Ct. at 1212. Plaintiff's plausible claim to certify a class--analogized to a private attorney general concept--endowed him with a sufficient "personal stake" in the outcome of the case for purposes of Article III's "case or controversy" requirement. Recognizing the potential breadth of this theory of third-party standing, the Court took pains to limit its application.
 
 
 55
 Our holding is limited to the appeal of the denial of the class certification motion.[18] A named plaintiff whose claim expires may not continue to press the appeal on the merits until a class has been certified. If, on appeal, it is determined that class certification properly was denied, the claim on the merits must be dismissed as moot.
 
 
 56
 445 U.S. at 404, 100 S.Ct. at 1213 (citation and footnote omitted) (emphasis added).
 
 
 57
 In dissent, Justice Powell argued that a procedural claim could not supply such a substantive right. By attributing the live claims of absent third parties to the named plaintiff, the Court was opening the judicial process to claims by "concerned bystanders." 445 U.S. at 413, 100 S.Ct. at 1217 (citing United States v. SCRAP, 412 U.S. 669, 687, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973)). Pointedly, Justice Powell questioned the logical stopping point of the majority's view. "If a plaintiff who is released from prison the day after filing a class action challenging parole guidelines may seek certification of the class, why should a plaintiff who is released the day before filing the suit be barred?" 445 U.S. at 422 n. 18, 100 S.Ct. at 1222 n. 18.
 
 
 58
 In a footnote responsive to Justice Powell's objections, the Court carefully delineated its narrow holding. Geraghty's injury, the Court noted, "continued up to and beyond the time the District Court denied class certification." 445 U.S. at 404-05 n. 11, 100 S.Ct. at 1213-14 n. 11. Therefore,
 
 
 59
 [w]e merely hold that when a District Court erroneously denies a procedural motion, which, if correctly decided, would have prevented the action from becoming moot, an appeal lies from the denial and the corrected ruling "relates back" to the date of the original denial.... The "relation back" principle ... serves logically to distinguish this case from the one brought a day after the prisoner is released. If the named plaintiff has no personal stake in the outcome at the time class certification is denied, relation back of appellate reversal of that denial still would not prevent mootness of the action.
 
 
 60
 445 U.S. at 404-05 n. 11, 100 S.Ct. at 1213-14 n. 11.
 
 
 61
 The "relation back" rationale rescues Article III's "case or controversy" requirement from virtual extinction. If Geraghty had lacked an individual grievance with the prison system when he moved for class certification, only the claims of absent "class" members could have supplied the requisite controversy. To allow a motion to proceed on that basis would eliminate the long-standing rule, reaffirmed in Geraghty, that the parties must have a " 'legally cognizable interest in the outcome' " at all stages of the litigation. Geraghty, 445 U.S. at 396, 100 S.Ct. at 1208 (citing Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969)). Therefore, the Geraghty Court made clear that the named plaintiff's attempt to represent the class was justifiable only because, at the time he moved for class certification, he possessed an interest in the outcome of the case. Geraghty's private dispute, although mooted, essentially carried forward for the limited purpose of arguing a reviewable motion through to completion. This interest in accurate resolution of his legitimate efforts to serve as class representative gave Geraghty a cognizable interest in class certification and thereby distinguished him from any other prisoner, already released, who might be concerned enough about his former fellow inmates to seek now to certify a class on their behalf. See 13A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3533.9, at 411 (1984). ("Certification of the class on appeal or remand relates back to the institution of the action, distinguishing the case from one first brought after the individual representative has lost any interest in the outcome.").
 
 
 62
 Therefore, under Geraghty 's "relation back" doctrine, the named plaintiff has the requisite personal stake in class certification only if (1) he has a live individual claim when the district court decides the class certification issue, or, at the very least, he had a live claim when he filed for class certification;[19] and (2) appellate review may reverse an erroneous denial of class certification that "if, correctly decided, would have prevented the action from becoming moot." Geraghty, 445 U.S. at 404-05 n. 11, 100 S.Ct. at 1213-14 n. 11.[20] In the situation at bar, appellants satisfy neither of these two essential conditions.
 
 
 63
 Highlighting the mandatory quality of the first condition, courts of appeals have repeatedly refused to apply Geraghty 's relation back doctrine when the named plaintiff's individual claims became moot before application for class certification. In Tucker v. Phyfer, 819 F.2d 1030 (11th Cir.1987), plaintiff, incarcerated in county jail, filed an action against the county sheriff and various other officials claiming that they were confining him and other juveniles in inadequate conditions. Two years later, when he had already been released from jail and was no longer subject to incarceration as a juvenile, he moved for class certification. The district court denied plaintiff's application as moot, and the Eleventh Circuit affirmed, distinguishing Geraghty and Sosna because "unlike the named plaintiffs in those cases, [plaintiff] did not move the court to certify his case as a class action until after his ... claim had become moot." 819 F.2d at 1035. See also Walker v. Haynes, 659 F.2d 46, 47 (5th Cir.1981) (noting that "those who represent a class must be members of the class at the time the class certification is asked"); Sannon v. United States, 631 F.2d 1247 (5th Cir.1980) (class-wide relief "does not relate to denial of certification and subsequent mootness of the purported representatives' claims, Geraghty, ... but rather relates to failure to certify prior to the dawn of mootness." 631 F.2d at 1252 (emphases in original).
 
 
 64
 As in the aforementioned cases, in the situation at bar, the plaintiffs' individual claims had already expired at the time they presented the March 29, 1991 motion to certify subclasses. Because a determination on the merits of the motion "could not relate back into a void," Tucker v. Phyfer, 819 F.2d at 1035, Geraghty was wholly inapplicable.
 
 
 65
 Appellants strain to meet the second Geraghty condition--review of the class certification issue by a court with power to cure the intervening mootness--by arguing that their certification motion "relates back" to and would correct Judge Lechner's assertedly erroneous class decertification, decided when they still had live claims.[21] However, plaintiffs' attempt to get a de novo hearing on class certification differs from Geraghty's direct appeal of the denial of his certification. Geraghty stands for the proposition that an erroneous ruling on an appealable class certification motion should not cause an entire action to be mooted. A federal court of appeals has the power to correct a mistaken ruling of a district court and thereby virtually erase intervening mootness; however, a district judge conducting a de novo hearing on a class certification issue previously decided by another district judge could in no sense correct the previous rulings. Had Judge Politan undertaken to address the class certification issue on its merits, and had he found himself to be in disagreement with Judge Lechner, all he could have attempted to do would be to certify a new class--or four new subclasses, as plaintiffs requested. But this would have involved the attempted creation of a live class claim where no live controversy existed. And this would have been beyond his power. "Geraghty does not breathe life into a still-born case." Holmes v. Fisher, 854 F.2d 229, 232 (7th Cir.1988).
 
 B. The Roper Rule
 
 66
 Having run up against the limits of Geraghty, appellants turn to Roper, asserting that their interest in shifting litigation costs to victorious class members confers sufficient economic "stake" for Article III purposes. The settling plaintiffs apparently entered into agreement with their counsel to be reimbursed for legal fees assessed from their individual settlements in the event of a successful class judgment.[22]
 
 
 67
 In Roper, credit card holders brought a class action challenging finance charges levied on their cards and those of similarly situated card holders. After the district court denied their motion for class certification on its merits, the bank tendered to each named plaintiff the maximum amount he would have recovered had he succeeded on the merits. The named plaintiffs refused the offer, but the district court, over their objections, entered judgment in their favor and dismissed the action as moot. Following dismissal, the plaintiffs appealed the trial court's previous order denying their motion to certify the class. The bank argued that the entire case had been mooted by the tender offer, but the court of appeals held that the case had not been mooted by the forced tender.
 
 
 68
 Agreeing with the court of appeals, the Supreme Court stated that an "appeal may be permitted from an adverse ruling collateral to the judgment on the merits at the behest of the party who has prevailed on the merits, so long as that party retains a stake in the appeal satisfying the requirements of Article III." 445 U.S. at 334, 100 S.Ct. at 1171-72 (footnote omitted). In the Court's view, the plaintiffs retained such a stake in the appeal because, even after full tender of their individual damages, plaintiffs had a "desire to shift to successful class litigants a portion of those fees and expenses that have been incurred in this litigation and for which they assert a continuing obligation." 445 U.S. at 334 n. 6, 100 S.Ct. at 1172 n. 6. Appellants would translate this language into an unlimited opportunity for any plaintiff--even if he has voluntarily settled his individual claims--to continue to represent a putative class, so long as he has privately arranged to profit from a successful class action.[23] However, Roper does not extend so far, and, indeed, in many senses is even more limited than Geraghty.
 
 
 69
 The Roper Court explicitly confined the holding of the case to its factual context. First, as in Geraghty, the Court noted that the issue at bar was the appealability of a procedural ruling, a matter over which the courts have a certain "latitude" to formulate standards.[24] Id. at 340, 100 S.Ct. at 1175. Second, the Court stressed that "[a]t no time did the named plaintiffs accept the tender in settlement of the case; instead, judgment was entered in their favor by the court without their consent and the case was dismissed over their continued objections." Id. at 332, 100 S.Ct. at 1171 (footnote omitted). Putting these two factors together, the Court simply held that neither a rejected tender nor the forced dismissal of plaintiff's case would "terminate the named plaintiffs' right to take an appeal on the issue of class certification." Id. at 333, 100 S.Ct. at 1171.
 
 
 70
 Here, there is no dispute that plaintiffs voluntarily settled their individual claims with Xerox. Regardless of whether plaintiffs who have voluntarily settled their individual claims can appeal a previous denial of class certification,[25] Roper does not purport to authorize a named plaintiff who has settled his individual claims to seek to re-open the case by presenting a new motion for class certification before the district court.
 
 C. The Appellate/De Novo Review Distinction
 
 71
 The distinction between appellate review of an adverse certification decision and a de novo motion to certify is completely consistent with the concerns animating Roper, Geraghty, and Article III generally. First, the Roper Court was concerned that if the right to appeal class certification questions evaporated upon satisfaction of individual claims, a defendant could avoid proper resolution of the class certification issue by "buying off" individual claims. The Court noted, "It would be in the interests of a class-action defendant to forestall any appeal of denial of class certification if that could be accomplished by tendering the individual damages claimed by the named plaintiffs." Id. at 339, 100 S.Ct. at 1174. The option of directly appealing an adverse decertification ruling--preserved in Geraghty/ Roper but not pursued by appellants in this case--typically prevents class-action defendants from paying to avoid final review of any class certification issues raised before settlement. The additional safeguard of reopening the issue of class certification before another district judge is not necessary to prevent undesirable "buying off,"[26] nor is it compatible with experience, which has disclosed "that for the security of rights, and the preservation of the repose of society, a limit must be imposed on the faculties for litigation." Washington, Alexandria & G. Steam-Packet Co. v. Sickles, 24 How. (65 U.S.) 333, 343, 16 L.Ed. 650 (1860).
 
 
 72
 Secondly, given the general concerns animating Article III, it is sensible to refrain from engaging in de novo review at the behest of plaintiffs whose individual claims have expired. The "case or controversy" requirement limits federal courts to deciding "questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." Flast v. Cohen, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968). When a district court adjudicates a class certification motion presented by a party with live claims, the record on that issue is created by litigants with a stake in the outcome. Then, after the named plaintiff's claim expires, he must only argue, and the appellate court need only decide, a tightly focused, discrete issue rooted in the existing record.[27] By contrast, in this case the plaintiffs specifically requested that Judge Politan decide the question entirely anew. Such a de novo hearing would require the creation of an entirely new record and adjudication of complicated class considerations that are " 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action,' " Coopers & Lybrand v. Livesay, 437 U.S. 463, 469, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (citation omitted), at a time when the interests of the putative class representatives may no longer be squarely adverse to defendant or wholly in line with absent "class" members.
 
 
 73
 Therefore, Geraghty and Roper do nothing more than establish the general rule--which appellants simply fall outside of--that a named plaintiff can appeal an adverse decision on class certification if, at the time the decision was rendered, or, at a minimum, at the time the class certification motion was filed,[28] that plaintiff had a live claim.
 
 2. The Transitory Claim Exception
 
 74
 In one limited situation, the availability of appellate review will not protect the interests of absent class members:
 
 
 75
 There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.
 
 
 76
 Sosna v. Iowa, 419 U.S. 393, 402 n. 11, 95 S.Ct. 553, 559 n. 11, 42 L.Ed.2d 532 (1975); see also the recital in Geraghty: "Some claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." 445 U.S. at 399, 100 S.Ct. at 1210 (citing Gerstein v. Pugh, 420 U.S. 103, 110-11 n. 11, 95 S.Ct. 854, 861-62 n. 11, 43 L.Ed.2d 54 (1975)). Under this exception to the mootness rule, a district court may decide an outstanding class certification motion even though the named plaintiff no longer has a live individual claim.
 
 
 77
 The Sosna and Gerstein version of the "relation back" doctrine was originally designed to ensure that fleeting individual claims not continually preclude class formation, where those claims were "capable of repetition but evading review."[29] However, Geraghty continued a trend toward cutting the "relation back" doctrine loose from its "capable of repetition yet evading review" moorings[30] and focused more generally on obtaining effective review of class certification issues. Additionally, Roper injected concerns about claims that, while not expiring naturally, were deliberately mooted by defendants who could afford to "pick off" successive plaintiffs and forestall the formation of a class. Combining these innovations, some courts extended the "relation back" doctrine to situations where the individual claims became moot due to tender of full settlement before the district court was reasonably able to reach the class certification question. See, e.g., Wilson v. Secretary of Health & Human Servs., 671 F.2d 673, 679 (1st Cir.1982); Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030 (5th Cir.1981); Susman v. Lincoln American Corp., 587 F.2d 866, 870 (7th Cir.1978), cert. denied, 445 U.S. 942, 100 S.Ct. 1336, 1337, 63 L.Ed.2d 775 (1980). As the Seventh Circuit explained, "[J]ust as necessity required the development of the relation back doctrine in cases where the underlying factual situation naturally changes so rapidly that the courts cannot keep up, so necessity compels a similar result [where defendants tender full amount of recovery to individual plaintiffs while the motion for certification is still pending]." Susman, 587 F.2d at 870; see also Zeidman, 651 F.2d at 1050 (noting that tender to successive named plaintiffs by a wealthy defendant could, as a practical matter, make a decision on class certification just as difficult to produce as it was in Gerstein ).
 
 
 78
 Appellants invoke these opinions, claiming that Xerox has engaged in a similar "picking off" strategy designed to forestall a class certification determination.[31] However, even so far as these opinions allow a district court to address outstanding certification issues after the named plaintiff's claims have expired, they still require the named plaintiff to have a personal stake when the class certification motion at issue was filed. Just as appellate review may relate back to an adverse class certification decision made when plaintiffs had a live claim, so district court review of a pending certification motion relates back to its filing, if plaintiff had a live claim at that time.[32]
 
 
 79
 In Zeidman, the district court refused to certify a Rule 23 class because of lack of evidence as to numerosity. In doing so, the court added that "this aspect of the class certification will remain open until sufficient additional evidence of numerosity is introduced into the record ..." 651 F.2d at 1035. The named plaintiffs then submitted additional evidence on numerosity, and on that same day defendants tendered to them the maximum amount of their personal recovery. Although the named plaintiffs refused the tender, the district court dismissed as moot both their individual and class claims despite the new numerosity evidence. On appeal, the Fifth Circuit reversed and remanded to the district court with instructions that it decide plaintiffs' pending motion for class certification.
 
 
 80
 The Fifth Circuit emphasized that "[c]entral to our resolution of the issues raised in this appeal is a proper understanding of the action taken by the district court in its initial opinion on class certification." 651 F.2d at 1037. The Fifth Circuit observed that the district court's original order "cannot properly be read as a denial of the plaintiffs' motion for class certification. As we read the district court's order ... the plaintiffs' motion was still pending ... when the plaintiffs submitted additional evidence and the defendants [made their tender]." Id. at 1041. Thus, the court concluded "that a suit brought as a class action should not be dismissed for mootness upon tender to the named plaintiffs of their personal claims, at least when, as here, there is pending before the district court a timely filed and diligently pursued motion for class certification." Id. at 1051 (emphasis added).
 
 
 81
 Therefore, echoing Roper, the concern was that the court (in Zeidman the district court) should have the opportunity to review the merits of the motion for class certification despite the intervening mootness of the individual claims, because otherwise "in those cases in which it is financially feasible to pay off successive named plaintiffs, the defendants would have the option to preclude a viable class action from ever reaching the certification stage." Id. at 1050 (emphasis added). Allegedly "picked off" putative class representatives may only continue to represent the class before the district court where, otherwise, a pending class certification motion would never get decided on the merits.
 
 
 82
 In this case, by contrast, there was a decision on the merits of class certification, not once but twice. No motion to certify was pending at the time plaintiffs' claims were settled, and the district court--rather than denying a hearing on an initially sound motion because of intervening events--simply refused to determine the class certification issue anew, for a third time. Where the named plaintiffs settled their case after some eight years and two failed attempts to certify a class, this simply was not a case where the trial court lacked a reasonable opportunity to rule on the merits of class certification or where the class-action defendant successfully prevented effective resolution of a class certification issue.
 
 
 83
 A. A New Exception to the General Mootness Rule is Unwarranted
 
 
 84
 Taken at their broadest, the cases we have discussed do nothing more than allow a putative class representative whose individual claims have expired to continue to litigate a class certification motion that was filed when the putative class representative had a personal stake in the outcome and that, in one way or another, has yet to be finally resolved. Appellants press us to expand these cases to allow plaintiffs who have voluntarily settled their claims to undertake to re-initiate a class action lawsuit that has no certified class. We find no justification for this extension, either in precedent or in policy.
 
 
 85
 We are not aware of a single case holding that a district court has subject matter jurisdiction to hear a motion to certify filed by named plaintiffs whose personal claims have expired. Without a rule that plaintiff have a live claim at least when the motion to certify is filed, the "case or controversy" requirement would be almost completely eviscerated in the class action context, since almost anybody might be deemed to have standing to move to certify a class. For example, a concerned citizen, with no personal grievance whatsoever against defendant, might file a class action out of empathy for those who were allegedly injured. However, "[t]o permit the certification of a class headed by a 'representative' who did not have a live controversy with the defendant on the day the suit began would be to jettison the last vestiges of the case-or-controversy requirement in class actions." Holmes v. Fisher, 854 F.2d 229, 233 (7th Cir.1988) (affirming dismissal of civil rights complaint brought by arrestee who claimed he was detained without a warrant but was arraigned before filing the suit); see also Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 734 (3d Cir.1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971) ("[A] predicate to appellee's right to represent a class is his eligibility to sue in his own right."); Note, Class Standing and the Class Representative, 94 Harv.L.Rev. 1637, 1637 (1981) ("It is axiomatic that an uninjured plaintiff cannot bring suit on behalf of an injured class."). The mere fact that the named plaintiffs in this case used to have a controversy with the defendant cannot confer a valid, unending procedural claim to represent that class.
 
 
 86
 Moreover, putative class members have an interest in speedy resolution of class certification issues.[33] As we noted in our second disposition of this case,In opt-in class actions, with their similarities to bills of peace, permissive joinders and intervention and their accompanying tolling problems, it is of the utmost importance that the decision on class status be made promptly so that the class members know whether to accept the "invitation to come in" or look out for themselves.
 
 
 87
 Lusardi v. Lechner, 855 F.2d 1062, 1069 (3d Cir.1988). Were named plaintiffs allowed to re-raise settled class certification issues at any time, even after their individual claims settled, the status of putative class members would remain fluid and uncertain. Cf. Jeff D. v. Andrus, 899 F.2d 753, 758 (9th Cir.1989) (holding that once district court entered order approving the settlement of class claims, it could not alter the class in the absence of "egregious error"). Particularly in the context of a complex litigation, we should not lose sight of the principle that "[t]he central role of adversary litigation in our society is to provide binding answers." 18 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure, § 4403, at 15 (1981).
 
 
 88
 Therefore, today we merely give fresh application to the unexceptionable proposition that named plaintiffs may no longer operate in a representative capacity once class certification has been denied and the time for appeal has lapsed.
 
 IV
 
 89
 Finally, we must decide whether the district court erred in denying the motion to intervene of four members of the decertified class. That motion was filed on August 26, 1991, more than a year after the named plaintiffs had settled their individual claims and almost three years after the second decertification order. The parties agree that the district court's ruling should not be reversed absent an abuse of discretion. See United States v. Philadelphia, 798 F.2d 81, 90 (3d Cir.1986).
 
 
 90
 Judge Politan presented three reasons for denying the proposed intervenors' motion. Chief among these, the district court found that "there is no live case or controversy into which the applicants may intervene." App. at 2085-86. Because we find that this ground, standing alone, adequately supports the district court's exercise of discretion, we need not explore the other stated reasons for denial of the motion to intervene.[34]
 
 
 91
 For reasons already thoroughly rehearsed, as soon as the named plaintiffs settled their individual claims there no longer was a "case or controversy" sufficient to ground their de novo motion for class certification. Injection of absent "class" members with live individual claims into an otherwise dead case could not correct the underlying Article III problem. "[B]ecause intervention is ancillary to the main cause of action, intervention will not be permitted to breathe life into a 'nonexistent' law suit." Fuller v. Volk, 351 F.2d 323, 328 (3d Cir.1965); see also McClune v. Shamah, 593 F.2d 482, 486 (3d Cir.1979) ("A motion for intervention under Rule 24 is not an appropriate device to cure a situation in which plaintiffs may have stated causes of action that they have no standing to litigate."). Therefore, the district court's denial of the motion to intervene was entirely appropriate.
 
 
 92
 United Airlines, Inc. v. McDonald, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977), is not to the contrary. In that case, the Court concluded that when, after denial of class certification, the named plaintiffs settled their claims and chose not to appeal the denial of certification, a member of the putative class could intervene in order to bring the appeal within thirty days of entry of final judgment. The Court emphasized that the applicant intervened not to proceed with the merits of her individual claim but to "obtain appellate review of the District Court's order denying class action status," a right that had been spurned by the named plaintiffs. 432 U.S. at 392, 97 S.Ct. at 2468 (emphasis added). Therefore, the intervention, rather than allowing the absent class members to do what the named plaintiffs had no standing to do, merely allowed absent class members to obtain appellate review that the named plaintiffs chose to forego.
 
 
 93
 In this case, by contrast, the applicants did not seek to intervene in order to appeal the denial of class certification. Instead, the complaint-in-intervention requested the district court to enter an order:
 
 
 94
 determining that this action may be maintained or certified as a class action under the ADEA ... [and] an order preliminarily and permanently enjoining Xerox ... from further implementation of corporate employment practices which discriminate against older workers when selection is made for termination during a period of reduction on work force while younger persons with less time in service are retained or hired to fill available openings ...
 
 
 95
 App. at 2059. Like the named plaintiffs themselves, the would-be intervenors intended to resurrect the litigation and obtain a de novo ruling on class certification. For this reason, the situation at bar differs from McDonald, and the district court correctly determined that there was no live case into which the applicants could have intervened.
 
 V
 
 96
 For the reasons given, the judgments of the district court dismissing the motion for class certification as moot and denying the motion for intervention will be affirmed. Additionally, Xerox's cross-appeal and motion to strike are dismissed as moot.
 
 
 
 *
 Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 Since this appeal raises jurisdictional issues alone, we need not explore these allegations in any detail
 
 
 [2]
 Section 7(b) of the ADEA adopts § 16(b) of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b) (1988). § 16(b) provides that an employee may bring an action on behalf of a class of "similarly situated" employees, subject to the requirement that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Therefore, the main difference between an ADEA class action and a Rule 23 class action is that the former requires potential class members to opt in, while the latter includes all class members who fail affirmatively to opt out. Lusardi v. Xerox Corp., 747 F.2d 174, 177 n. 3 (3d Cir.1984)
 
 
 [3]
 On December 16, 1987, Judge Lechner entered a final order granting Xerox's motion to decertify the class. App. at 123-24
 
 
 [4]
 Reassignment took place on December 14, 1987, two weeks before plaintiffs appealed Judge Lechner's original decertification order. Nonetheless, Judge Lechner handled the decertification question on remand from this court
 
 
 [5]
 This ruling was memorialized in a Final Pretrial Order, entered on June 15, 1990
 
 
 [6]
 The letter opinion was entered on the docket on August 15, 1991
 
 
 [7]
 Compliance with the Rules of Appellate Procedure for proper filing of a notice of appeal is " 'mandatory and jurisdictional.' " Matute v. Procoast Navigation, Ltd., 928 F.2d 627, 629 (3d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 329, 116 L.Ed.2d 270 (1991) (citing United States v. Robinson, 361 U.S. 220, 224, 80 S.Ct. 282, 285, 4 L.Ed.2d 259 (1960))
 
 
 [8]
 The Civil Information Statement phrased the first issue proposed to be raised on appeal as follows:
 Did the district court err in failing to find that, pursuant to Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), the 'similarly situated standard' for opt-in class action purposes is met when the putative class representative presents a prima facie case that he or she was adversely affected by a corporate-wide pattern or practice of age discrimination?
 Xerox understandably conjectured that this question was directed to Judge Lechner's decision, since Judge Politan himself never reached the merits of the class certification issue, instead dismissing the motion for class certification on jurisdictional grounds. Nonetheless, appellants were apparently concerned with Judge Lechner's conclusions only indirectly--insofar as they assumed "that had [Judge Politan] conducted the de novo class certification hearing contemplated by the MOU, the district court would have adopted Judge Lechner's conclusions." Appellants Brief in Sup. at 27. Therefore, even the ambiguous "district court" reference in appellants' Civil Information Statement was apparently directed to the hypothetical error attributed to Judge Politan.
 
 
 [9]
 Federal Rule of Appellate Procedure 4(a)(1) requires a party to file a notice of appeal from a civil judgment or order within 30 days of the entry of that judgment or order. Judge Politan stated that the time for appeal from Judge Lechner's second decertification order would begin to run from the entry date of his letter opinion formally dismissing the class action claims as moot (August 15, 1991). App. at 2046. Xerox argued in its cross-appeal that the 30 day clock began to tick as soon as the stipulation of dismissal was entered (on February 8, 1991) and that the notice of appeal, filed on October 16, 1991, was therefore untimely. Xerox did not argue that the notice of appeal was untimely even on Judge Politan's own calculus because it was filed two months after the docketing of his August 13th letter opinion. Presumably it is appellants' view that the notice of appeal was timely with reference to Judge Politan's September 30th denial of reconsideration. Because we decide that appellants did not properly designate the Lechner order for appeal, we need not reach the timeliness issue, and the cross-appeal is dismissed as moot
 We note, however, that the timeliness question, were we to reach it, is by no means an insubstantial one. 28 U.S.C. § 1291 limits this court's jurisdiction to appeals of "final decisions" of the district courts of the United States; thus, once an order becomes "final," the time for appeal begins to run. "Federal appellate jurisdiction generally depends on the existence of a decision by the District Court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " Coopers & Lybrand v. Livesay, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) (citing Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)) (emphasis added). Because settlement and dismissal of a plaintiff's individual claims resolve the matter, the Court has treated the trial court's entry of a judgment of dismissal, pursuant to agreement of the parties, as the final judgment for purposes of Fed.R.App.P. 4(a). See United Airlines, Inc. v. McDonald, 432 U.S. 385, 389-90, 97 S.Ct. 2464, 2467-68, 53 L.Ed.2d 423 (1977). Indeed, in his September 30th opinion, Judge Politan himself noted that "plaintiffs cannot avoid the fact that Judge Lechner's decertification order became a final order when the individual plaintiffs settled their individual claims." App. at 2085 (emphasis in original). While it is true that Judge Politan did not formally enter an order dismissing the class claims until August 15, 1991, "[a]n order that effectively ends the litigation on the merits is an appealable final judgment even if the district court does not formally include judgment on a claim that has been abandoned." Jones v. Celotex Corp., 867 F.2d 1503, 1503-04 (5th Cir.1989) (per curiam), cert. denied, 493 U.S. 900, 110 S.Ct. 260, 107 L.Ed.2d 209 (1989). Assuming that plaintiffs had 30 days from the dismissal of their individual claims (on February 8, 1991) to appeal Judge Lechner's second decertification order, Judge Politan could not have extended the time for appeal absent a timely filed motion for extension of time, and even then only a 30 day extension would have been warranted. See Fed.R.App.P. 4(a)(5).
 
 
 [10]
 Based on these representations, Xerox moved to strike on relevance grounds the sections of appellants' brief and appendix dealing with Judge Lechner's second decertification order. We are not in fact going to address Judge Lechner's order; therefore, the motion to strike is dismissed as moot for the same reason that we dismiss as moot the cross-appeal seeking to dismiss the portion of the appeal pertaining to review of Judge Lechner's order. See supra note 9
 
 
 [11]
 Appellants' reluctance to appeal Judge Lechner's order may have been due to their view that the effect of the MOU was "to cancel, neutralize and annul the November 7, 1987 and October 21, 1988 decertification orders as precedential interlocutory orders binding on the parties or the district court." Appellants' Brief in Opp. to Motion to Dismiss at 9. Also, appellants may have been anxious to obtain a de novo hearing on the class certification issue, rather than have this court review Judge Lechner's determination under an "abuse of discretion" standard
 
 
 [12]
 Form 1 (in the Appendix of Forms) reads as follows: "Notice is hereby given that C.D., defendant above named, hereby appeals to the United States Court of Appeals for the ____ Circuit (from the final judgment) (from the order (describing it)) entered on the ____ day of ____."
 
 
 [13]
 See supra pp. 968-969 for text of notice of appeal. Far from appealing generally from the "final judgment," appellants mentioned, almost parenthetically, that one of the orders "constitute[ed] a final judgment." In fact, there is reason to doubt that Judge Politan's August 13th opinion actually constituted the "final judgment" on the class claims. See discussion supra note 9
 
 
 [14]
 We have occasionally exercised appellate jurisdiction over a third class of cases--where (1) appellant designated a summary judgment order dismissing remaining counts of the complaint, yet not an earlier order dismissing other counts; (2) the parties nonetheless fully briefed and argued all of the issues; and (3) the earlier order could not be appealed until final judgment. See Murray v. Commercial Union Ins. Co., 782 F.2d 432, 434-35 (3d Cir.1986); Gooding v. Warner-Lambert Co., 744 F.2d 354, 357 n. 4 (3d Cir.1984). In this case, only the last condition is met
 
 
 [15]
 It is ironic that appellants assume that Judge Politan would have adopted Judge Lechner's conclusion, since, under the terms of the MOU, Judge Lechner's rulings were not to be "the law of the case." App. at 1933. Judge Politan himself assured the parties that "Judge Lechner's ruling is not binding on me as either law of the case, precedent, or anything of that nature...." App. at 1947. Indeed, appellants elsewhere refer to "the explicit agreement of the parties that the Lechner decision had no precedential or other binding nature after the MOU was approved by the district court ..." Appellants' Brief in Opp. to Motion to Dismiss at 10
 
 
 [16]
 Therefore, neither the named plaintiffs' articulated intent to continue seeking class certification after settlement of their individual claims, nor language in the MOU to the effect that "Xerox will not oppose my standing [to continue to act as a putative class representative] on the basis of this Release," App. at 1933, can avoid a mootness problem
 
 
 [17]
 The district court observed that plaintiffs would never have even attempted to obtain a de novo hearing on class certification were it not for "the mere fortuity" of this case being reassigned, for the second time, to another judge. App. at 2045. Even upon reassignment, the normal procedure is for the new district judge to reconsider the previous class certification determination only if new facts have developed. See Zenith Lab., Inc. v. Carter-Wallace, Inc., 530 F.2d 508, 512 (3d Cir.1976), cert. denied, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976)
 
 
 [18]
 Similarly, at the outset of its opinion, the Geraghty Court described the question to be resolved as "whether a trial court's denial of a motion for certification of a class may be reviewed on appeal after the named plaintiff's personal claim has become moot." 445 U.S. at 390, 100 S.Ct. at 1205
 
 
 [19]
 Some courts of appeals have read Geraghty as holding that a district court loses jurisdiction over a pending class certification motion--filed when named plaintiff has a live claim--where the named plaintiff's individual claims are resolved subsequent to the filing of the class certification motion but before the district court is ready to rule on the motion. See, e.g., Rocky v. King, 900 F.2d 864, 869 (5th Cir.1990) (emphasis added) (holding that, under Geraghty, plaintiff "[did] not meet the personal-stake requirement even for the limited purpose of appealing the district court's denial of class certification because his individual claim had become moot when that ruling was made "); Tucker v. Phyfer, 819 F.2d 1030, 1033 (11th Cir.1987) (emphasis added) ("In a class action, the claim of the named plaintiff, who seeks to represent the class, must be live both at the time he brings suit and when the district court determines whether to certify the putative class. If the plaintiff's claim is not live, the court lacks a justiciable controversy and must dismiss the claim as moot."); Inmates of Lincoln Intake & Detention Facility v. Boosalis, 705 F.2d 1021, 1023 (8th Cir.1983) (emphasis added) ("A named plaintiff must have a personal stake in the outcome of the case at the time the district court rules on class certification in order to prevent mootness of the action."). For the most part, the post-Geraghty cases in this court recognizing that plaintiff's interest in class issues survives resolution of that plaintiff's individual claims have been cases in which the plaintiff's claims had not been resolved prior to denial of the class certification motion. See, e.g., Eisenberg v. Gagnon, 766 F.2d 770, 784-85 (3d Cir.1985), cert. denied sub nom. Weinstein v. Eisenberg, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985); Mazus v. Department of Transp., 629 F.2d 870, 875-76 (3d Cir.1980), cert. denied, 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981); Alexander v. Gino's, Inc., 621 F.2d 71, 73-74 (3d Cir.) (per curiam), cert. denied, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980). However, in Wilkerson v. Bowen, 828 F.2d 117, 121 (3d Cir.1987), in which the named plaintiffs' individual claims were favorably resolved and the district court thereafter denied the pending class certification motion, this court held that resolution of the named plaintiffs' individual claims did not ipso facto preclude the district court from addressing the class certification motion:
 It would seem to us that the principle espoused in Geraghty is applicable whether the particular claim of the proposed class plaintiff is resolved while a class certification motion is pending in the district court (as in the present case) or while an appeal from denial of a class certification motion is pending in the court of appeals (as in Geraghty ).
 For a further discussion of situations where a district court may decide a pending class certification even after the named plaintiff's individual claims are resolved, see infra Part III, 2.
 Still, no opinion of which we are aware allows a district court to exercise jurisdiction over a class certification motion filed by a named plaintiff lacking a live claim at the time the motion is filed.
 
 
 [20]
 Numerous opinions interpreting Geraghty have stressed that it only allows, in certain circumstances, an appeal from a decertification order after plaintiff's claims have been settled, to correct any underlying error. See, e.g., Davis v. Ball Memorial Hosp. Ass'n, Inc., 753 F.2d 1410, 1418 n. 14 (7th Cir.1985) ("In Geraghty and Roper, the Court only held that the named class representatives whose claims had become moot, could appeal the denial of class certification."); Sannon v. United States, 631 F.2d 1247, 1252 (5th Cir.1980) (noting that Geraghty held that a proposed class representative whose individual claims have been mooted maintains a concrete Article III "case" or "controversy" "only for the limited purpose of challenging the class certification denial")
 
 
 [21]
 In a statement as intricate in its structure as in its reasoning, appellants claim that it "follows from the rulings of the Supreme Court and this court in Geraghty if Judge Lechner's decision that no subclass of FLSA Section 16(b) opt-in plaintiffs could be certified in this ADEA class action is erroneous, certification of appropriate subclasses to overcome managerial difficulties such as those cited in the decertification opinions merged into the August 13, 1991 final judgment rendered by Judge Politan relate back to the time that Xerox must concede the plaintiffs had standing and adequately alleged class based claims of a willful pattern or practice of age discrimination." Appellants' Supplemental Brief in Response to Court's Letter at 18-19
 
 
 [22]
 The thirteen named plaintiffs each signed a letter of authorization drafted by their lawyers which reads in relevant part:
 I further confirm that I have been informed that in the event of a settlement or judgment with respect to the putative class and an award of attorney's fees is made to members of associated plaintiffs' counsel, ten percent of any such attorney fee awarded up to a maximum of $1,425,000 is to be reallocated to the thirteen named plaintiffs in accordance with the percentages set forth on the schedule attached to this authorization letter. That is, in my particular case, as do the other named plaintiffs, I will continue to have a monetary interest in the putative class action.
 App. at 2116 (letter signed by plaintiff Lusardi).
 
 
 [23]
 Appellee argues that the "private arrangement" between appellants and their counsel to recover a portion of future attorneys' fees is clearly distinguishable from Roper, where the rejected tender offer made no allowance for attorneys' fees. Appellee's Brief in Opp. at 19. On Xerox's view, since the settlement agreement with each plaintiff included an award of a 30% contingency fee and the MOU released Xerox from any additional liability to plaintiffs with respect to their individual or class claims in the instant action, Xerox itself could under no circumstance accrue additional liability to the named plaintiffs in the event of class certification. Therefore, according to Xerox, the named plaintiffs' potential economic return does not create a "case or controversy" with Xerox
 We need not resolve the interesting question of whether a private economic arrangement between plaintiffs and their counsel--apparently designed, at least in part, to avoid Article III problems--is the type of economic stake contemplated by Roper. This question need not be reached because we find that the Roper "economic" stake doctrine does not come into play when named plaintiffs who have voluntarily settled their individual claims seek to re-open the case and file a new motion to certify with the district court.
 
 
 [24]
 In fact, the entire Roper opinion is based on the long-standing right of a party who has prevailed on the merits to appeal adverse collateral rulings in certain circumstances. See id. 445 U.S. at 332-36, 100 S.Ct. at 1170-73
 
 
 [25]
 In Geraghty, which was argued and decided contemporaneously with Roper, the Court specifically reserved the question whether a named plaintiff who settles his individual claim after denial of class certification may, consistent with Article III, appeal from the adverse ruling on class certification. See Geraghty, 445 U.S. at 404 n. 10, 100 S.Ct. at 1212 n. 10. The few courts to address this issue have generally agreed that, at least in the absence of an express attempt to retain the right to appeal, a named plaintiff who has settled his claims may not appeal an adverse class certification determination. Compare Shores v. Sklar, 885 F.2d 760 (11th Cir.1989), cert. denied, 493 U.S. 1045, 110 S.Ct. 843, 107 L.Ed.2d 838 (1990) (named plaintiff's acceptance of tender and consent to an entry of judgment in his favor "given without reservation of a right to appeal, bars a subsequent appeal of the order denying class certification") with Love v. Turlington, 733 F.2d 1562 (11th Cir.1984) (holding that where plaintiff had expressly attempted to retain the right to appeal from the denial of class certification, his appeal from denial of class certification was not moot). See also Walsh v. Ford Motor Co., 945 F.2d 1188, 1191 (D.C.Cir.1991) (noting that the " 'procedural right' recognized in Geraghty, to appeal a certification denial ... may be released as part of a plaintiff's voluntary settlement.") (footnote omitted). In the case at bar, the named plaintiffs and Xerox expressly recorded their joint understanding that the named plaintiffs would attempt to continue to represent the interests of the class after settling their individual claims. The MOU provides, "the parties acknowledge that it is the plaintiffs' intention to make application to the court as putative class representatives, for a hearing seeking recertification of a class." App. at 1931. However, unlike Love, plaintiffs did not expressly retain the right to appeal Judge Lechner's decertification order, but instead attempted to reserve the right to continue litigating the question of class certification before the district court
 
 
 [26]
 By the same token, Geraghty 's broader concern that erroneous class certifications be corrected is also typically satisfied by the availability of direct appeal
 
 
 [27]
 Should the appellate court reverse and remand to the district court, the district court may, of course, have to engage in a more searching inquiry, perhaps receiving new evidence from the litigants, in order to conform to the appellate court's mandate. However, even in such a situation, the trial court would have the benefit of a well-developed record and would not have to start from scratch
 
 
 [28]
 See note 19 and accompanying text, supra
 
 
 [29]
 The "capable of repetition yet evading review" doctrine is applied in class actions only where the named plaintiff had a personal stake at the outset of the litigation, and where his claim might arise again with respect to him. See Geraghty, 445 U.S. at 398, 100 S.Ct. at 1209; cf. City of Los Angeles v. Lyons, 461 U.S. 95, 110, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983) (holding that the capable of repetition doctrine only applies in those exceptional circumstances where a plaintiff can reasonably show that he may again be subject to the alleged illegality.) The rationale is that "[s]ince the litigant faces some likelihood of becoming involved in the same controversy in the future, vigorous advocacy can be expected to continue." Geraghty, 445 U.S. at 398, 100 S.Ct. at 1210. For instance, in Gerstein, pretrial detainees jailed without a probable cause hearing were allowed to continue to litigate the class certification issue, despite the end of their pretrial detention, because pretrial detention was, by nature, temporary, and the challenged unconstitutional conditions could, at a later time, work injustice on them or similarly situated persons. See 420 U.S. at 110-11 n. 11, 95 S.Ct. at 861-62 n. 11. Adhering to this narrow version of the "relation back" doctrine, some courts only appear to allow a named plaintiff whose individual claims have expired to continue to represent the class in the situation in which his claims are transitory and capable of recurring with respect to him. See, e.g., Magnuson v. City of Hickory Hills, 933 F.2d 562, 565 (7th Cir.1991); Rocky v. King, 900 F.2d 864, 869-71 (5th Cir.1990); Ahmed v. University of Toledo, 822 F.2d 26 (6th Cir.1987)
 
 
 [30]
 The Court in Franks v. Bowman Transp. Co., 424 U.S. 747, 754, 96 S.Ct. 1251, 1259, 47 L.Ed.2d 444 (1976), applied Sosna 's "relation back" doctrine without requiring that there remain "an issue 'capable of repetition, yet evading review.' "
 
 
 [31]
 We need not decide whether there has been a sufficient showing that Xerox deliberately "picked off" the named plaintiffs, since we decide that the district court correctly dismissed the class certification motion as moot even if Xerox engaged in deliberate efforts to prevent class formation
 
 
 [32]
 It seems to us, as we explained in Wilkerson v. Bowen, 828 F.2d 117, 121 (3d Cir.1987), that allowing a district court to decide a pending class certification motion--filed when the named plaintiff had a live claim--after the named plaintiff's individual claims have been resolved is consistent with the Supreme Court's holding in Geraghty. Other courts do not share this view. See note 19, supra
 
 
 [33]
 Federal Rule of Civil Procedure 23(c)(1) provides that "as soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." In some districts, the courts have adopted rules providing that class certification motions must be filed within a specific time. 7B C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure, § 1785, at 92-93 (1986). Moreover, under Rule 23, the court need not even wait for a formal motion to certify to decide whether a class should be certified. Id. at 89
 
 
 [34]
 The district court also noted that the application for intervention was "grossly untimely," the proposed intervenors having made no effort to intervene in the nearly three years from the date of class decertification. Even assuming that the proper question is whether the intervenors acted promptly after the entry of a judgment of dismissal of the named plaintiffs' individual claims, when the adverse class determination became appealable, see United Airlines, Inc. v. McDonald, 432 U.S. 385, 391-94, 97 S.Ct. 2464, 2468-70, 53 L.Ed.2d 423 (1977), intervenors did not file their motion until more than six months after the dismissal of the named plaintiffs' claims. Additionally, the district court mentioned that Xerox would be prejudiced by being forced to engage in extensive additional discovery to determine whether the proposed intervenors would be adequate class representatives