OPINION OF THE COURT
WEIS, Circuit Judge.
In this appeal, we decide that the defendant lawyers’ decision to invoke federal case law, rather than a procedural rule, in persuading a district judge to issue a maritime attachment does not give rise to a cause of action for malicious abuse of civil process under state law. The lawyers did not act in bad faith because they disclosed the existence of the alternative courses to the Court. We also conclude that the conflict between the procedural rule and the opinion of a United States Court of Appeals raises a federal question sufficient to support removal of the malicious abuse of process claim from the state court to the federal forum. We will affirm the District Court’s judgment in favor of the defendants.
Plaintiff U.S. Express Lines, Ltd. (“Express Lines”) is a Pennsylvania corporation that chartered vessels from various shipowners to carry cargo for its customers. The company maintained its principal place of business in Paoli, Pennsylvania, within the Eastern District of Pennsylvania.
Express Lines had arranged financing through a line of credit from Founders *387 Bank, secured by certificates of deposit purchased by the individual plaintiffs. When the company encountered cash flow problems in 1997, it began negotiating for further financial support from other institutions. In January 1998, it advised its creditors, including the defendant vessel owners, of the encouraging progress of its efforts.
Nevertheless, on February 11, 1998, one of the vessel owners, through its counsel, defendant Ann-Michele Higgins of defendant law firm Rawle & Henderson, applied to the United States District Court for the Eastern District of Pennsylvania for the attachment of “all assets, goods, and chattels, belonging to” Express Lines. In seeking the attachments, the defendant attorneys cited as governing law an opinion of the Court of Appeals for the Eleventh Circuit, rather than the Supplemental Rules for Admiralty Claims. On February 17, 1998, the District Court ordered that the certificates of deposit at Founders Bank be attached.
Other creditor vessel owners took similar action through their attorneys, defendants A. Robert Degen and the law firm of Fox, Rothschild, O’Brien, & Frankel, Ltd., Laurence Shtasel and Jeffrey S. Moller, both of defendant Blank Rome Comisky & McCauley, and Harry G. Mahoney and Thomas C. Sullivan, of the defendant law firm Deasey, Mahoney, & Bender, Ltd. As a result of these legal actions, Express Lines defaulted on its loan agreements and was forced to suspend and eventually cease its commercial operations.
The District Court vacated the attachments on November 5, 1998, concluding that its decision to depart from the restrictions imposed by Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (“Supplemental Rule B”) was in error. The Court then directed the parties to arbitration in accordance with the terms of the charter party, ordered that the assets that Founders Bank had deposited in an interpleader action remain in the Court’s custody, and retained jurisdiction pending arbitration.
On January 28, 1999, Express Lines and the individual owners of the certificates of deposit at Founders Bank filed suit in the Court of Common Pleas of Chester County, Pennsylvania, against the vessel owners and their various counsel. The complaint sought compensatory and punitive damages for abuse of process, conspiracy, wrongful use of civil proceedings, and other torts.
Plaintiffs contend that defendants secured the writs of attachment in direct violation of Rule B, which precludes the seizure of maritime assets if the debtor is found within the district in which the litigation is commenced. They assert that defendants were well aware that Express Lines kept its principal office in the Eastern District of Pennsylvania and thus, they acted in bad faith in seeking attachments in that district.
The defendant vessel owners were never served with process, and the claims against them were ultimately dismissed.[1] The lawyer defendants removed the case to the District Court, and the plaintiffs moved to remand. The District Court refused, concluding that, based as it was on the issuance of maritime attachments, “[t]he federal element [of the litigation] cuts to the heart of each of Plaintiffs’ claims” and, therefore, federal question jurisdiction existed.
*388 The District Court dismissed the case under Federal Rule of Civil Procedure 12(b)(6), holding that the defendant lawyers’ actions were privileged because they had not misled the Court as to the underlying facts or relevant law in obtaining the attachment. The Court added that there had been no abuse of process in the defendants’ use of maritime attachments to collect debts whose legitimacy plaintiffs did not contest. Because the writs had. been issued with court authorization, the defendants had not acted in a grossly negligent manner or without probable cause. Accordingly, the Court held that the plaintiffs had failed to establish their state law claims.
In this appeal, plaintiffs contend that the defendant attorneys misled the Court in securing the attachments, and that the efforts to obtain them were made in bad faith because the charter party required that disputes be arbitrated. The plaintiffs also assert that the District Court erred in declining to remand the case to the state court.
The defendants deny that they engaged in any deception and argue that the state law claims fail as a matter of law. Alternatively, they contend that because the challenged activity occurred in a- federal court, no state cause of action may be applied to their conduct. Finally, defendants assert that because of an omission in the plaintiffs’ notice of appeal, this Court lacks appellate jurisdiction.
We exercise • plenary review of the District Court’s dismissal for failure to state a claim under Rule 12(b)(6). Jordan v. Fox, Rothschild, O’Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994). When considering a Rule 12(b)(6) motion, courts accept as true the allegations in the complaint and its attachments, as well as reasonable inferences construed in the light most favorable to the plaintiffs. Id. Although a district court may not consider matters extraneous to the pleadings, “a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.” In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.1997) (internal quotations omitted); see also Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192 (3d Cir.1993) (matters of public record).
We review de novo a district court’s denial of remand. Angus v. Shiley Inc., 989 F.2d 142, 143 n. 1 (3d Cir.1993); see also Luckett v. Delta Airlines, Inc., 171 F.3d 295, 298 (5th Cir.1999).
I.
We first address jurisdictional issues. The plaintiffs’ complaint alleges violations of state law. Because the parties are not diverse, our jurisdiction, as well as that of the District Court, must rest upon the existence of a federal question. 28 U.S.C. §§ 1331, 1441(b).
At the outset, we address an error in the defendants’ brief that cites Lusardi v. Xerox Corp., 975 F.2d 964 (3d Cir.1992), as dispositive of our appellate jurisdiction. Lusardi holds that, with certain exceptions not pertinent here, an appeal taken from a specified judgment or part of a specified judgment does not confer upon the court of appeals jurisdiction to review other judgments or portions not specified or inferred from the notice of appeal. 975 F.2d at 971-72.
Defendants contend that because plaintiffs did not designate the order denying remand in their notice of appeal, we do not have authority to review that issue. This argument is oblivious to the duty of federal courts to examine their subject *389 matter jurisdiction at all stages of the litigation sua sponte if the parties fail to raise the issue. That obligation extends to removal cases, as well as to those originally filed in the district courts. Meritcare Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214, 217 (3d Cir.1999); Trent Realty Assocs. v. First Fed. Sav. & Loan Ass’n of Phila., 657 F.2d 29, 30 (3d Cir.1981). Clearly, Lusardi is inapposite to the removal jurisdiction issue in this case.
Any civil action brought in state court may be removed by the defendant to the federal district court in the district where such action is pending, if the district court would have original jurisdiction over the matter. 28 U.S.C. § 1441(a); Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 7-8, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Where the parties are not diverse, removal is appropriate only if the case falls within the district court’s original “federal question” jurisdiction: “all civil actions arising under the Constitution, laws, or treaties of the United States.” 28 U.S.C. §§ 1331, 1441(b); Franchise Tax Bd., 463 U.S. at 8, 103 S.Ct. 2841.
In determining whether a case arises under federal law, courts are instructed to look to the plaintiffs “well-pleaded complaint.” Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). It is not enough that a federal question is or may be raised as a defense. Id.; Trent Realty, 657 F.2d at 33. “[T]he controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal.” Westmoreland Hosp. Ass’n v. Blue Cross of W. Pa., 605 F.2d 119, 122 (3d Cir.1979) (quoting Gully v. First Nat’l Bank in Meridian, 299 U.S. 109, 113, 57 S.Ct. 96, 81 L.Ed. 70 (1936)). Attachments to the complaint are considered part of it.
The state suit need not invoke a federal law in order to “arise under” it for removal purposes. It is sufficient that the merits of the litigation turn on a substantial federal issue that is “an element, and an essential' one, of the plaintiffs cause of action.” Gully, 299 U.S. at 112, 57 S.Ct. 96. The controversy must be “genuine and present ... not merely ... conjectural.” Id. at 113, 57 S.Ct. 96. In short, the federal law “must be in the forefront of the case and not collateral, peripheral, or remote.” Merrell Dow, 478 U.S. at 813 n. 11, 106 S.Ct. 3229; see also United Jersey Banks v. Parell, 783 F.2d 360, 367 (3d Cir.1986) (no federal question existed because right to relief under state law did not require resolution of a substantial question of federal law). It need not, however, be a situation in which federal law completely preempts state law. See Goepel v. Nat’l Postal Mail Handlers Union, 36 F.3d 306 (3d Cir.1994) (discussing “complete preemption” doctrine).
The case before us does not involve the “artful pleading” doctrine, which requires a court to peer through what are ostensibly wholly state claims to discern the federal question lurking in the verbiage. See, e.g., United Jersey Banks, 783 F.2d at 367. The complaint filed in the state court is quite detailed and is augmented by numerous documents, such as the motions for attachment, the charter party, and the order attaching Express Lines’ assets. The complaint and the documents affixed to it charge the defendants with malicious abuse of process in causing the District Court to override Rule B’s restrictions in erroneous reliance on a Court of Appeals opinion.
The plaintiffs argue that the mere fact that the property attachments were granted pursuant to maritime law is an inadequate basis for removal. They point out *390 that under the saving to suitors clause, 28 U.S.C. § 1333(1), federal and state courts have concurrent jurisdiction in maritime matters. See Supplemental Rule B(1); Romero v. Int’l Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); In re Dutile, 935 F.2d 61, 62-63 (5th Cir.1991); Furness Withy (Chartering), Inc., Panama v. World Energy Sys. Assocs., Inc., 854 F.2d 410, 411 n. 1 (11th Cir.1985).
The saving to suitors clause “preserves alternatives of suing on the ‘law side’ of the federal court or in state court, with admiralty and maritime law applied to the claim.” George K. Walker, Supplemental, Pendent & Ancillary Jurisdiction in Admiralty and Maritime Cases: The ALI Federal Judicial Code Revision Project and Admiralty Practice, 32 J. Mar. L. & Com. 567, 568 (2001); see also id. at 568 n. 8 (listing cases); Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 444-45, 121 S.Ct. 993, 148 L.Ed.2d 931 (2001) (explaining that saving to suitors clause preserves concurrent jurisdiction of state courts over some admiralty and maritime claims); 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Proc. § 3672, at 301-05 (3d ed.1998). The plaintiffs’ argument would carry weight if their state cause of action were a maritime one. But it is not; it is a claim for malicious use of process, a state tort not confined to admiralty.
The Supreme Court, construing federal question jurisdiction in the removal context, has held that admiralty cases do not fall within the scope of 28 U.S.C. § 1441, which designates as appropriate for removal only those cases “arising under the Constitution, treaties or laws of the United States.” Romero, 358 U.S. at 368-69, 79 S.Ct. 468. Thus, an admiralty case filed in state court may only be removed if there exists some independent basis for federal jurisdiction, such as diversity of citizenship. Id. at 380-381, 79 S.Ct. 468. We need not here discuss the logic or reasoning of Romero, which has spawned more than its share of commentary.[2] It is enough for us to recognize its existence, because we conclude that it is not applicable.
As we have noted, the removed case is not an admiralty action but one involving state tort law. Moreover, the federal question at the heart of this litigation is the applicability and construction of Supplemental Rule B. Although the Rule sets out procedures to be followed in maritime attachments, it is in fact part of the Federal Rules of Civil Procedure, adopted under the authority of the Rules Enabling Act, 28 U.S.C. § 2072.
The Rules of Practice in Admiralty and Maritime Cases, which took effect in 1920, were rescinded as of July 1, 1966. At that time, admiralty rules were merged into the Rules of Civil Procedure. This consolidation was similar to that which abolished the distinction between law and equity.
*391 Since 1966, admiralty procedure has therefore been governed by the Federal Rules of Civil Procedure. All rules governing these procedures are recommended by the Advisory Committee on Civil Rules and adopted in accordance with the conventions of the Rules Enabling Act. Although Rule B delineates procedures that are particularly applicable to the unique features of maritime attachments, it is nonetheless an integral part of the Federal Rules of Civil Procedure.
It is noteworthy that Romero was decided in 1959, prior to the consolidation of the admiralty and civil rules. Thus, any effect that Romero might have had on the construction of rules of admiralty procedure was abrogated by that consolidation. Support for this position is found in the language of the Rules Enabling Act itself, which provides that “[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.” 28 U.S.C. § 2072(b); see Henderson v. United States, 517 U.S. 654, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996) (holding that Fed.R.Civ.P. 4 superseded service provision in the Suits in Admiralty Act).
At the heart of each of the plaintiffs’ state law claims is the assertion that the defendants acted in bad faith by urging the District Court to disregard a federal rule of procedure, which would have barred the attachments, and to rely instead on case law, which permitted the seizures. The plaintiffs have thus alleged a substantial question of federal law involving an apparent clash between a procedural rule and a contrary holding by a United States Court of Appeals.[3] Moreover, this conflict arises in the area of maritime attachments, a subject of particular concern to the federal courts, and one where national uniformity is of some importance. See Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 209-11, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996) (discussing various contexts in which “vindication of maritime policies demanded uniform adherence to a federal rule of decision, with no leeway for variation or supplementation by state law.”). Although not determinative, it is worth noting that this case also implicates the Federal Arbitration Act, 9 U.S.C. § 1 et seq.
Fundamentally, the plaintiffs argue that the Eleventh Circuit opinion is incorrect, and it is that allegedly erroneous interpretation of federal law upon which their state claim depends. Where a plaintiffs complaint requires the juxtaposition of a court of appeals decision and an apparently conflicting procedural rule, the federal courts may properly claim jurisdiction. This is particularly so where, as here, the decision in controversy has not been overruled or reversed. The Eleventh Circuit opinion is a carefully reasoned exposition, concluding that Rule B does not limit admiralty’s historic jurisdiction. The Court did not overlook Rule B, but analyzed it and found that its restrictions did not apply.
We are persuaded that in the unique circumstances here, the federal issue set forth in the complaint is an essential element of the plaintiffs’ cause of action. Accordingly, the case was properly removed and the District Court did not err in denying the motion to remand.
*392 II.
Having resolved the jurisdictional issue, we now consider the federal and pendent state claims on the merits. We invoke our discretion in choosing to first consider the federal defenses to the state suit.
The fact that a federal question permits removal does not go so far as to support the defendants’ contention that preemption applies. They argue that because the events complained of occurred in a federal court, the state claims are superseded and the plaintiffs are limited to the relief afforded by Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the inherent powers of a court as explicated in Chambers v. NASCO, Inc., 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).
Not surprisingly, the plaintiffs disagree. They rely on Pennsylvania’s Dragonetti Act, 42 Pa.C.S.A. § 8351 et seq., and common law, both of which provide a cause of action for the wrongful use of civil proceedings. The Act establishes liability when “[a] person who takes part in the procurement, initiation or continuation of civil proceedings against another” acts “in a grossly negligent manner” or without probable cause and primarily for an improper purpose. Id. § 8351(a). A plaintiff may recover under the Act for harm resulting from interference with the advantageous use of land, chattels or other things, and other expenses which include reasonable attorneys’ fees, harm to reputation, specific pecuniary loss resulting from the proceedings, emotional distress, and punitive damages. Id. § 8353.
The recovery under Dragonetti can be more expansive than the sanctions available under Rule 11, which are generally limited to counsel fees or fines, or counsel fees alone under 28 U.S.C. § 1927. Even assessments made under the inherent power of the courts have not been held to cover such matters as consequential damages, loss to reputation, or emotional distress.[4]
The breadth of the remedy provided by the state statute is a strong indication of its substantive nature. Under the Rules Enabling Act, 28 U.S.C. § 2072(b), procedural rules may not supplant substantive rights but the line between procedure and substance is notoriously difficult to draw. In Burlington Northern Railway Co. v. Woods, 480 U.S. 1, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987), the Supreme Court held that “Rules which incidentally affect litigants’ substantive rights do not violate” the Rules Enabling Act if they are “reasonably necessary to maintain the integrity of that system of rules.” 480 U.S. at 5, 107 S.Ct. 967 (emphasis added).
Following that rationale, the Court later emphasized that Rule 11 was intended to deter frivolous suits in the *393 district courts. Business Guides, Inc. v. Chromatic Communications Enters., Inc., 498 U.S. 533, 552-53, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991). In pursuing that goal, courts can impose sanctions by way of attorneys’ fees without reallocating the burdens of litigation, as prohibited by the American Rule set forth in Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Id.
Business Guides also rejected the argument that “Rule 11 creates a federal common law of malicious prosecution.” 498 U.S. at 553, 111 S.Ct. 922. Continuing, the Court stated, “[t]he main objective of the Rule is not to reward parties who are victimized by litigation,” but to deter baseless filings. Id. Although it conceded that sanctioning a party might benefit its adversary, the Court was “confident that district courts will resist the temptation to use sanctions as substitutes for tort damages,” id., and noted that in the event that a district court misapplied the Rule in a particular case, the error could be corrected on appeal. Id. at 554, 111 S.Ct. 922. Business Guides found no need for such a correction because there, the district court had properly declined to include consequential damages in awarding attorneys’ fees and out-of-pocket expenses. Id.
In Tarkowski v. County of Lake, 775 F.2d 173, 175 (7th Cir.1985), the court held that the state tort law of malicious abuse of process applies to federal litigation as well. Our experience in this field has been limited, but two of our opinions that we will discuss support that holding.
The Bankruptcy Code provides more extensive sanctions than those afforded by the Rules of Civil Procedure or 28 U.S.C. § 1927. Section 303(i)(2) of the Code permits the assessment of damages — including those of a punitive nature — caused by a person who files a petition for involuntary bankruptcy in bad faith. 11 U.S.C. § 303(f)(2). Despite the broad scope of remedies available in the Code and the general exclusivity of the federal courts in bankruptcy, we have held that a state claim for malicious abuse of process was not preempted. Paradise Hotel Corp. v. Bank of Nova Scotia, 842 F.2d 47, 51 52 (3d Cir.1988).
In that case, we discovered that because of a gap in the text the Code failed to provide a remedy against a creditor that had improperly filed an involuntary petition for bankruptcy against a debtor. We concluded that Congress did not intend preemption to extend to the point of barring a debtor from the use of a state remedy.[5] Id.; see also Silver v. Mendel, 894 F.2d 598 (3d Cir.1990) (malicious filing of involuntary petition for bankruptcy not protected by judicial privilege).
Our review of extant case law persuades us that the Federal Rules of Civil Procedure do not preempt claims for abuse of process and similar torts providing relief for misconduct in federal litigation. Therefore, victims of such misconduct may, in appropriate circumstances, bring suit to recover damages under state causes of action.
In a number of cases, district courts within this circuit have reached conflicting results on the preemption issue.[6] We rec *394 ognize that some of these courts have relied on legitimate public policy concerns in concluding that the federal rules foreclose state claims in the nature of abuse of process arising out of federal litigation. We also acknowledge that inevitably conflicts will arise between the federal rules and state substantive claims.
Although federal preemption would forestall such controversies, the precepts of federalism and the congressional decision to restrict the sanctions available within the federal system militate against such a resolution of the problem. As in so many other overlapping areas of federal and state law, we must rely on the traditional comity between the two systems to deal adequately and innovatively with such common problems.
III.
Under Pennsylvania law, lawyers may be sued in their individual capacities for wrongful use of civil proceedings. E.g., Dietrich Indus., Inc. v. Abrams, 309 Pa.Super. 202, 455 A.2d 119 (1982). That tort as applied in Pennsylvania conforms with section 674 of the Second Restatement of Torts. Rosenfield v. Pennsylvania Auto. Ins. Plan, 431 Pa.Super. 383, 636 A.2d 1138, 1141 (1994). The Dragonetti Act’s definition of the tort is in agreement with that of the Restatement, Rosen v. American Bank of Rolla, 426 Pa.Super. 376, 627 A.2d 190, 192 (1993), and an attorney who knowingly prosecutes a groundless action to accomplish a malicious purpose may be held accountable under the Act. Elec. Lab. Supply Co. v. Cullen, 712 A.2d 304 (Pa.Super.1998).
Some distinction has been drawn between malicious use of process and abuse of process. Malicious use has to do with the wrongful initiation of civil process, as contrasted with abuse, which is concerned with perversion of process after litigation has begun. Dumont Television & Radio Corp. v. Franklin Elec. Co. of Phila., 397 Pa. 274, 154 A.2d 585, 587 (1959).
Whatever may have been the importance of that distinction before the Dragonetti Act was adopted, it appears that both torts are subsumed within the general scope of the Act, which includes persons who take part in the procurement, initiation or continuation of civil proceedings for wrongful purposes. 42 Pa.C.S.A. § 8351(a). Liability attaches to those who act in a grossly negligent manner or without probable cause and primarily for a purpose other than adjudication of a claim. Id. In addition, the proceeding must have been terminated in favor of the person who invokes the Act. Id. § 8351(a)(2).
It may be seen that a party seeking redress under Dragonetti bears a heavy burden. Here, it is somewhat questionable whether the allegedly offending procedure was terminated in favor of the plaintiff. Although the attachments have been dissolved, the District Court, as noted earlier, retained jurisdiction pending arbitration. Thus, no final judgment has been entered in favor of the plaintiffs. Section *395 674(b) of the Restatement, however, makes an exception from the finality rule in ex parte proceedings. In view of the somewhat unusual status of the earlier litigation and in the interests of judicial economy, we will assume arguendo that we may, under state law, proceed to the merits because the ex parte attachment proceedings had been terminated in favor of the plaintiffs.
The plaintiffs’ first contention is that seeking maritime attachments, despite the arbitration clause in the charter party, demonstrated bad faith. This argument is utterly lacking in merit. The Federal Arbitration Act provides that in admiralty actions, “the party claiming to be aggrieved may begin his proceeding ... by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration....” 9 U.S.C. § 8.
Indeed, so fundamental is the right to attach that the parties cannot consent in advance to forego that remedy. In The Anaconda v. American Sugar Refining Co., 322 U.S. 42, 43, 64 S.Ct. 863, 88 L.Ed. 1117 (1944), the charter party provided for arbitration but specifically precluded application of section 8. Nevertheless, the aggrieved party began legal process by foreign attachment. The Supreme Court held that although the parties had agreed to arbitrate, the attachment remedy could be enforced. Id. at 45-46, 64 S.Ct. 863. See also Marine Transit Corp. v. Dreyfus, 284 U.S. 263, 275, 52 S.Ct. 166, 76 L.Ed. 282 (1932) (“By the express terms of § 8, the libel and seizure are authorized as an initial step in a proceeding to enforce the agreement for arbitration.... ”). Clearly, the defendants in this case did not act in bad faith by carrying out procedures authorized by the Federal Arbitration Act.
The plaintiffs next argue that the defendants, knowing that Federal Rule B did apply, nevertheless secured the writs of attachment by improperly prevailing upon the District Court to follow the opinion in Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A. de Navegacion, 773 F.2d 1528 (11th Cir.1985) (en banc). The District Court later released the attachments, believing that Rule B, rather than Leonhardt, provided the controlling law. The plaintiffs seize on this reversal by the District Court of its earlier ruling as evidence of the defendants’ bad faith in misleading the court.
We cannot accept the plaintiffs’ argument. The Leonhardt opinion was written by a distinguished judge of the Eleventh Circuit for an en banc court. The Court was fully aware of Rule B, but after reviewing the history of admiralty law determined that federal courts are empowered to apply maritime procedures as they existed at the time of the Constitution’s adoption. Leonhardt, 773 F.2d at 1533. In the Court’s view, Rule B was not intended to be the exclusive source of maritime attachments available to the court, nor was it intended to limit or impair the traditional power of the court in exercising admiralty jurisdiction. Id.
The defendants’ motions for issuance of a writ of attachment stated, “This court has the power apart.from Rule B to issue a maritime attachment” and cited Leon-hardt. The defendants, therefore, did not misinform the District Court as to the interplay between Rule B and the Court of Appeals opinion. In announcing the decision to vacate the attachments, the District Judge acknowledged, “The Court may have been wrong but there was no deception on the Court.”
There is a paucity of case law on this particular point, and it reaches the point of absurdity to contend that competent attor *396 neys were guilty of bad faith in urging the District Court to follow this respectable authority. The fact that the District Court later reversed its reliance on the Eleventh Circuit case and concluded that Rule B governed does not establish that the lawyers exercised bad judgment, let alone bad faith. Indeed, in a number of cases, Rule B has been attacked as being unconstitutional. See, e.g., Polar Shipping Ltd. v. Oriental Shipping Corp., 680 F.2d 627, 642-45 (9th Cir.1982) (Byrne, J., dissenting).
We conclude that the plaintiffs have failed to establish bad faith as required under the Dragonetti Act and Pennsylvania common law. Accordingly, we affirm the District Court’s dismissal of the state law claims.
Having explored the background at length and concluded that the plaintiffs have not shown bad faith on the part of the defendants, we find it unnecessary to resolve the conflict between Leonhardt and Rule B. On the facts, the plaintiffs cannot recover under either version of the law. Consequently, we will affirm the District Court’s dismissal of the entire case.
The judgment of the District Court will be affirmed.

. The plaintiffs have not contested the dismissal of the defendant shipowners and have treated this case as directed solely against the lawyers. We will do likewise.

. See, e.g., Kenneth G. Engerrand, Removal and Remand of Admiralty Suits, 21 Tul. Mar. L.J. 383, 385 (1997) (discussing removal of admiralty cases and stating that “[d] espite the fact that the 'congressional language ... is perfectly understandable in ordinary English,’ the determination whether admiralty cases can be removed has been affected by historical accident rather than traditional principles of statutory interpretation;”) id. at 386-90 (explaining Romero’s effect on federal question jurisdiction in admiralty claims); George Rutherglen, The Federal Rules for Admiralty and Maritime Cases: A Verdict of Quiescent Years, 27 J. Mar. L. & Com. 581, 590-92 (1996) (discussing complexities in saving to suitors clause actions resulting from Romero); David J. Sharpe, The Future of Maritime Law in the Federal Courts: A Faculty Colloquium, 31 J. Mar. L. & Com. 217, 232-34 (2000) (recognizing the confusion as to removal in admiralty).

. That the federal question was an essential, and ultimately dispositive, element is demonstrated by the fact that were we to decide that Leonhardt, discussed infra, was the correct statement of the law, the plaintiffs’ case could be dismissed on that basis alone. Moreover, Express Lines sustained its injury at the time the attachments were served and the assets seized. The District Court’s decision vacating the attachments came too late to save the company.

. The damages that might be awarded for wrongful attachment have not been fully explored. Neither party has raised or briefed the preemption aspect in this context. A brief examination of the case law indicates that damages in this area, if awarded at all, generally consist of attorneys’ fees, costs, and expenses "directly” attributable to the attachment. See Furness Withy (Chartering), Inc., Panama v. World Energy Sys. Assocs., Inc., 772 F.2d 802 (11th Cir.1985) (no bad faith, therefore no damages awarded); Ocean Ship Supply, Ltd. v. MV Leah, 729 F.2d 971 (4th Cir.1984) (same); Frontera Fruit Co. v. Dowling, 91 F.2d 293 (5th Cir.1937) (same). See also Coastal Barge Corp. v. M/V Maritime Prosperity, 901 F.Supp. 325 (M.D.Fla.1994) (damages assessed included attorneys' fees and expenses, direct and derivative damages); State Bank & Trust Co. of Golden Meadow v. Boat "D.J. Griffin," 755 F.Supp. 1389 (E.D.La.1991) (attorney's fees and lost profits assessed). We have not encountered an award of such items as consequential damages, loss of reputation, or punitive damages that are available under the Dragonetti Act.

. We recognize that the Court of Appeals for the Ninth Circuit has held that the Bankruptcy Code completely preempts state actions for malicious use of process, Gonzales v. Parks, 830 F.2d 1033 (9th Cir.1987), and is thus in tension with Paradise Hotel.

. Compare Mruz v. Caring, Inc., 39 F.Supp.2d 495 (D.N.J.1999) (district court whose federal question jurisdiction has been invoked applies federal rather than state law on abuse of process), and Thomason v. Lehrer, 183 F.R.D. 161 (D.N.J.1998) (federal court is exclusive *394 forum to seek redress for litigation abuses committed in a federal suit), with Fumo v. Gallas, 2001 WL 115460 (E.D.Pa. Feb.6, 2001) (federal law does not preempt state law claims), T.B. Proprietary Corp. v. Sposato Builders, Inc., 1996 WL 674016 (E.D.Pa. Nov.20, 1996) (stating that neither Rule 11 nor 28 U.S.C. § 1927 preempts state law cause of action for abuse of process), Cannon v. Sheller, 825 F.Supp. 722 (E.D.Pa.1993) (Dragonetti Act not preempted by ERISA where action does not relate directly or indirectly to ERISA plan), and Plavin v. Bristol Borough, 1988 WL 100814 (E.D.Pa. Sept.27,-1988) (recognizing that there is no federal tort of malicious prosecution, and state law reaches litigation abuses).