IN THE UNITED STATES DISTRICT COURT 
 FOR THE WESTERN DISTRICT OF PENNSYLVANIA 

BETTE EAKIN, et al, ) 
 Plaintiffs, ) Civil Action No. 1:22-CV-340 
 ) 
 v. ) Re: Motion to Dismiss 
 ) ECF No. 240 
ADAMS COUNTY BOARD OF ) 
ELECTIONS, et al, ) 
 Defendants. ) 

 MEMORANDUM OPINION 

 Presently before this Court is a motion to dismiss the amended complaint filed by the 
Intervenor-Defendants, the Republican Committees. ECF No. 240. 

 J. Relevant Procedural History 
 In 2019, the Commonwealth of Pennsylvania expanded mail-in voting. The new 
provisions have increased voter participation, but have been the subject of intense and repeated 
litigation in state and federal courts. This action challenges the application of one of those state 
law provisions. 
 The operative complaint in this matter is the amended complaint filed by three 
organizations! and an individual voter. ECF No. 228. The organizational-Plaintiffs challenge the 

1 These organizations include the Democratic Party’s national senatorial committee (the 
“DSCC”), the national congressional committee (the “DCCC”), and the American Federation of 
Teachers (the “Federation”’). 
2 Bette Eakin lives in Erie County and is legally blind. In the November 2022 election, she 
submitted a mail-in ballot but did not enter the date on the outer Return Envelope. She was 
notified that her ballot would be rejected unless the missing date was rectified. Ms. Eakin was 
able to cure her undated ballot envelope with the assistance of her husband who was forced to 
cut short a hunting trip. ECF No. 228, ¢ 12.

disqualification of undated and incorrectly dated mail-in ballots and allege that their members 
are at risk of disenfranchisement, while Ms. Eakin alleges that she was nearly disenfranchised by 
Defendants’ actions in the November 2022 midterm election and fears that she may be similarly 
disenfranchised in the future. ECF No. 228, J 12. Plaintiffs allege that the actions of Defendants 
infringe on their rights under both the Federal Materiality Provision of the Voting Rights Act and 
the First and Fourteenth Amendments. The relief Plaintiffs seek is primarily injunctive and 
declaratory. 
 The named Defendants are each of the sixty-seven county Boards of Elections of the 
Commonwealth. The Republican Committees’ have been allowed to intervene as of right under 
Federal Rule of Civil Procedure 24(a). ECF No. 165. 
 Presently before this Court is a motion to dismiss the amended complaint filed by 
Intervenor-Defendant Republican Committees. ECF No. 240. Plaintiffs, as well as some 
Defendants, have opposed the pending motion to dismiss. ECF No. 267 (Allegheny, Chester, 
Montgomery, and Philadelphia County Boards of Elections); ECF No. 266 (Plaintiffs). And the 
Intervenor-Defendants have filed a Reply brief. ECF No. 268. This motion is fully briefed and is 
ripe for disposition by this Court. 
 Due to the nature of the claims and the prayer for prospective injunctive relief, this case 
has been set on an expedited track. During the pendency of the motion to dismiss, the parties 
were ordered to engage in the discovery process and they have recently filed cross-motions for 
summary judgment. The arguments raised by the Intervenor-Defendants in the present motion to 

3 The Republican National Committee is the national committee of the Republican Party as 
defined by 52 U.S.C. § 30101(14); the National Republican Congressional Committee is the 
national congressional committee of the Republican Party; and the Republican Party of 
Pennsylvania is a major political party and is registered as a state committee under federal law.

dismiss are raised more robustly in their motion for summary judgment. In this unusual 
procedural posture, we proceed. 

 II. Standard of Review 
 A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal 
sufficiency of the complaint. Kost v. Kozakiewicz, | F.3d 176, 183 (3d Cir. 1993). Generally, a 
complaint that provides adequate facts to establish “how, when, and where” will survive a 
motion to dismiss brought under Rule 12(b)(6). Fowler v. UPMC Shadyside, 578 F.3d 203, 212 
(3d Cir. 2009). 
 In deciding a motion to dismiss, a court is not opining on whether a plaintiff is likely to 
prevail on the merits; instead, the plaintiff must only present factual allegations sufficient “to 
raise a right to relief above the speculative level.” Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 
(2007) citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp., 235-236 □□ 
ed. 2004). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009). A complaint should only be 
dismissed under Rule 12(b)(6) if it fails to allege “enough facts to state a claim to relief that is 
plausible on its face.” Twombly, 550 U.S. at 570. In making this determination, the court must 
accept as true all well-pleaded factual allegations in the complaint and view them in a light most 
favorable to the plaintiff. U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). 
 The Court of Appeals for the Third Circuit instructed that district courts are to engage in 
a three-step inquiry in order to determine the sufficiency of a complaint: 
 First, the court must take note of the elements a plaintiff must 
 plead to state a claim. Second, the court should identify allegations 
 that, because they are no more than conclusions, are not entitled to 
 the assumption of truth. Finally, where there are well-pleaded 
 factual allegations, a court should assume their veracity and then

 3 . 

 determine whether they plausibly give rise to an entitlement for 
 relief. 
Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 212 (3d Cir. 2013) quoting Burtch v. Milberg 
Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011). 
 At the third step, the Court must consider the specific nature of the claims presented and 
determine whether the facts pled to substantiate the claims are sufficient to show a “plausible 
claim for relief.” Covington v. Int’l Ass’n of Approved Basketball Officials, 710 F.3d 114, 118 
(3d Cir. 2013). A complaint cannot be dismissed simply because it appears unlikely or 
improbable that a plaintiff can prove the facts alleged or will ultimately prevail on the merits. 
Twombly, 550 U.S. at 563, n.8. Instead, the appropriate inquiry is whether the facts alleged raise 
a reasonable expectation that discovery will reveal evidence of the necessary elements. /d. at 
556. 
 With this standard of review in mind, the Court now turns to an examination of the 
factual allegations of the amended complaint and the pending motion to dismiss it. 

 II. The Allegations of the Amended Complaint 
 The Commonwealth’s mail-in voting provisions allow all eligible voters to vote by mail. 
ECF No. 228, § 18. On November 1, 2022, the Pennsylvania Supreme Court interpreted a 
Pennsylvania statute, 25 P.S. § § 3146.6(a), 3150.16(a), to order elections officials to “not count 
qualified voters’ mail-in and absentee ballots due to an immaterial omission of a written date, or 

| the entry of an incorrect date, on the outside of the ballot envelope.” Jd. at 2, 30.4 At the 

* This Court takes judicial notice that this Order was issued without opinion. The order indicated 
that the six justices were deadlocked as to whether the application of the statute violated the 
Federal Materiality Provision. See Ball v. Chapman, 284 A.3d 1189 (Pa. Nov. 1, 2022).

election held a few days later, the County Boards identified and rejected thousands of mail-in 
ballots with a missing or incorrect date. /d. at ¥ J 3, 12. 
 The Election Code instructs voters casting mail-in ballots to (1) mark their ballot “on or 
before eight o’clock p.m. the day of the primary or election”; (2) use only “black lead pencil, 
indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen”; (3) “fold the 
ballot, enclose and securely seal the same in the envelope on which it is printed, stamped or 
endorsed ‘official election ballot’”; (4) place their completed ballot in a blank, secrecy envelope; 
(5) place the secrecy envelope into a separate, outer envelope, “on which is printed the form of 
declaration of the elector”; and (6) “fill out, date and sign the declaration printed on such 
envelope” before returning it to the voter’s county board of elections. Jd. at 19, quoting 25 P.S. 
§ § 3150.16(a), 3146.6(a). 
 Plaintiffs allege that the date instruction on the outer envelope in the voter declaration 
(hereinafter referred to as the “Date Instruction”) serves no meaningful purpose and is 
immaterial to whether a voter is qualified to vote under Pennsylvania law. Plaintiffs contend that 
this is demonstrated by ample evidentiary records developed through extensive litigation since 
the 2020 election. Moreover, in July 2022, the Deputy Secretary for Elections and Commissions 
at the Pennsylvania Department of State, Jonathan Markes, testified that counties do not use the 
handwritten date to determine timeliness and have no mechanism of verifying whether the 
handwritten date is accurate. Marks also testified that he didn’t believe there was any situation in 
which the handwritten date would be relevant to whether the vote is counted. Jd. at J 20. 
 Plaintiffs allege that the Date Instruction has no relevance to determining whether an 
individual is qualified to vote under Pennsylvania law which mandates that a voter be at least 18 
years old, have been a citizen of the United States for at least a month, have resided in the

Commonwealth for at least 90 days, have resided in the district where they intend to vote for at 
least 30 days, and have not been confined for a felony within the last five years. Jd. at 4, citing 
25 P.S. § § 2811, 2602(t); 25 C.S. § 1301. 
 Plaintiffs further allege that, to the extent any date is relevant to a voter’s qualifications to 
participate in a particular election under Pennsylvania law, it is the date of that election, not the 
date that the voter completed, signed, or mailed their ballot. Moreover, a mail ballot’s timeliness 
depends not on the date the voter completed, signed, and submitted it, but instead solely on the 
date and time the Board of Elections receives it. /d. at 9 5. The date on the ballot envelope has no 
bearing on a voter’s qualifications and serves no purpose other than to erect barriers to qualified 
voters exercising their fundamental constitutional right to vote. Plaintiffs claim this impediment 
violates Section 101 of the Civil Rights Act and the First and Fourteenth Amendments to the 
U.S. Constitution. 

 IV. The Motion to Dismiss 
 The Republican Committees move to dismiss this action for failure to state a claim upon 
which relief can be granted pursuant to Rule 12(b)(6). ECF No. 240. Rather than arguing that 
Plaintiffs have not pled sufficient factual allegations to support both legal claims, 
Intervenor-Defendants contend that the mandatory application of the Date Instruction is not 
implicated by and does not violate the Federal Materiality Provision. Additionally, Intervenor- 
Defendants argue that the application of the Date Instruction does not violate the First 
Amendment because it does not unduly burden the right to vote. These arguments are more 
appropriately raised and analyzed in the procedural context of summary judgment.° 

> These arguments are raised more fully in the pending motion for summary judgment. 
 60

 A. The Materiality Provision Challenge 
 The right of every citizen to vote is a fundamental right. Donald J. Trump for President, 
Inc. y. Boockvar, 493 F. Supp. 3d 331, 383 (W.D. Pa. 2020) citing IIL. State Bd. of Elections v. 
Socialist Workers Party, 440 U.S. 173, 184 (1979). The right to vote “is a foundational right 
‘that helps to preserve all other rights.’” Jd. quoting Werme v. Merrill, 84 F.3d 479, 483 (1st Cir. 
1996). As the Supreme Court opined almost sixty years ago, “[o]ther rights, even the most basic, 
are illusory if the right to vote is undermined.” Wesberry v. Sanders, 376 U.S. 1, 17 (1964). 
 In 1965, Congress enacted the Voting Rights Act “in an effort to achieve at long last what 
the Fifteenth Amendment had sought to bring about 95 years earlier: an end to the denial of the 
right to vote based on race.” Brnovich v. Democratic Nat'l Comm. __ U.S. __, 141 S.Ct. 
2321, 2330 (2021). The Materiality Provision, a portion of the Voting Rights Act, prohibits 
denial of the right to vote based on immaterial mistakes on voting-related paperwork. Put another 
way, federal law prohibits a state from erecting immaterial roadblocks to voting.® 

 Enforceability 
 .Whether these private Plaintiffs have a right to enforce the Federal Materiality Provision 
must be addressed at the outset. The Materiality Provision expressly provides for enforcement by 
the Attorney General of the United States, but is silent as to enforcement by others. See 52 
U.S.C. § 101 01(c). If Plaintiffs do not have the right to enforce the Materiality Provision, this 
claim must be dismissed. 

6 Where “compliance with both state and federal law is impossible,” federal law “must prevail.” 
Oneok, Inc. v. Learjet, Inc., 575 U.S. 373, 377 (2015).

 Likseu bstfeadnetlriaav"lwep , r irviagothfeat cst .im.ou.ns b tec reabtye d 

CongrAelsesx.a"vnS .da enrd o5v3Ua2.l S2,.7 258,(62 00W1h)ea.ns sessinpgr iwvhaetteh er 
plaimnateyin fffso afer dceesr taalwt iuttheao neu xtp rceasuossfa e c tciooun"r,mt usfis rts t 
deterwmhientCeho enrg irnetsestn ocd reedaaf teed erriaglGh otn.z"Ua ngiavv D..o e5,3U 6. S. 
27238,(32 00C2o)u.lr ototskot hrfaecet wohresdn e termwihneitsnhtgea rt tuetcxootrn yt ains 
rights-lcanrgeuaa"tg(ite1nh:)sge t atpurtoovrimysu isboten n etfihpetl aiwnittairh ffi sg ht 
unambigucoounsfelrbyryC e odn gr(e2ts)hsr e;i gchatnn boets o' vaagnuadem orphotuhisat'ts 
enforcweomuseltndrt ja uidnic coimaple taen(nd3c )es ;tt ahmteuu stitem poabs ien ding 
obligoantt hiSeot na tLeeswv.iA."sl exa6n8dF5e. r33,d2 354,(4 3 Cdi 2r0.1 c2i)t Bilnegs vs.i ng 
Frees5t2oU0n. eS3,.2 394,0 -(4119 97). 
 ThCeo uorfAt p pefoartl hsTe h iCridr caudidtr etshpsere edcq iuseesp trieosneh netreed, 

conduacnit ne-dd aenpatlhay nscdio sn,c ludPeedn ntshyalrtve agniisvato'etshre aerdds "a 
privraitgoehfa t c ttioeo nnf §o1 r0c1eu0n1d 4e2Ur . S§.1 C9.8 M3i.g"l viC.oo rhie3 n6F, . 3d 
15135,(6 3 Cdi Mra.y2 72,0 2T2h)we.e ll-raenatdsh oonreoodpu ignhi on trhe§ac tognized 
101"0s1p ecicfiocnatlelmyapp lraitvpealsta"ei " nbtriiffnt ghtyiipnsoeg f c laiincm o uIrdta..t " 
16A0l.thotuhMgeih g loipoirnhiia bosen e vna cattheCidos,u fi rntdi str se asopneirnsgu asive,
particounlt ahqreul eys twihoent ahpo erfri vpaltaeim natryia ffia s 1§e0 1c0h1a lltehnrgoeu gh 
42U .S§.1 C9.87 T 3h.atthS eu prCeomurevt a catthjeeud d gmoeftn hCtei rcbuaisetex dp licitly 
onm ootn[esRseiset vtM.ei rg lioUr.i_S,,._ 1 4S3. C2t9.(7 O c1t12.,0 2i2os)f ]n o 

7S eael Sscoh wviC.eo rx3 ,4F 0. 3d 11229(8714th 1C,i r. (2M0a0t3e)rP iraolvii"tsmyiab oyen 
enfobrycap e rdi vraitgoehfa t c tuinod§ne1 r983B.u"st)e N.eo ,r thOehaiCsoot a lfiottrih oen 
HomelveH.su ss t8e3dF7,. 36d1 62,3( 0th6 Cir. (2"0[1Tn6]e)hg eai tmipvlei ocfa tion 
Congrpersosv'ifossr ei nofno rcbeytm hAeetn tto Grenneeyir tsah lta htse t adtouentsoep t e rmit 
privraitgoehfa t cst ion."). 
consequence to the analysis of the private enforceability of the Materiality Provision undertaken 
in the Circuit’s ruling. 

 Stating a Claim 
 The Materiality Provision prohibits state officials from denying any individual the right 
to vote “because of an error or omission on any record or paper” that relates to any “application, 
registration, or other act requisite to voting, if such error or omission is not material in 
determining whether such individual is qualified under State law to vote in such election.” 52 
U.S.C. § 10101(a)(2)(B). To state a claim for violation of the statute, a plaintiff must 
allege: (1) denial of the right to vote (2) “because of an error or omission” (3) “on any record or 
paper relating to ... an act requisite to voting” (4) that is “not material” in determining the 
voter’s qualification to vote. /d. Plaintiffs allege that (1) the rejection of ballots denies the right 
to vote; (2) rejection is based on missing or incorrect dates; (3) on the outer return envelope; and 
(4) the dates are not material to determining the qualification of the voter. 
 In making a determination as to whether Plaintiffs have stated a claim, this Court must 
accept the veracity of the well-pleaded factual allegations and view them in the light most 
favorable to Plaintiffs. U.S. Express, 281 F.3d at 388. Here, Plaintiffs have met all the basic 
requirements in order to state a claim as they have factually supported each of the components of 
the claim. 
 In their motion to dismiss, the Intervenor-Defendants contend that the application of the 
Date Instruction does not implicate, let alone violate, the Materiality Provision. Intervenor- 
Defendants make several arguments in this regard. These arguments, and the legal citation in 
support, are based almost exclusively on a dissent from the denial of an application for stay at the

U.S. Supreme Court. Intervenor-Defendants take the dissenting opinion and extrapolate their 
reasoning therefrom. This Court is not swayed by such arguments at this stage in the proceedings 
because they find their genesis in an opinion that carries little, if any, precedential weight.® 
Moreover, these arguments and the complete history of the case they arise out of are more 
appropriately discussed in the disposition of the cross-motions for summary judgment. 
 At this stage of the proceedings, accepting the veracity of their factual allegations, 
Plaintiffs have sufficiently stated a plausible claim for relief. 

 B. The First Amendment Challenge 
 In their Amended Complaint, Plaintiffs allege that the Date Instruction unduly burdens 
the tight to vote. ECF No. 228, § 42. Pennsylvania’s lack of guidance to the voter on 
how to determine the correct date for the outer envelope subjects voters to arbitrary 
disenfranchisement. /d. at § 47. This causes confusion for both voters and the county Boards of 
Elections. /d. Rejecting these ballots serves no legitimate purpose and functions only to 
disenfranchise eligible voters. Jd. at § 48. The Date Instruction imposes an unnecessary hurdle 
that eligible Pennsylvanians must clear to exercise their most fundamental right, resulting in 
otherwise valid votes being arbitrarily rejected, while advancing no compelling (or even 

® See Trevor N. McFadden and Vetan Kapoor, The Precedential Effects of the Supreme Court's 
Emergency Stays, 44 Harvard Journal of Law & Public Policy 827, 882 (Summer 2021) (“In 
sum, we argue that decisions to deny a stay have no precedential value.”). See also Kristen E. 
Parnigoni, Shades of Scrutiny: Standards for Emergency Relief in the Shadow Docket Era, 63 
B.C. L. Rev. 2743, 2749 (Nov. 2022) (“Shadow docket decisions now comprise an unwieldy 
block of new jurisdiction, albeit with unclear precedential value, on high-stakes issues.”); Bryan 
Garner, et al., Law of Judicial Precedent 219 (2016) (“[A] refusal to hear a case says nothing 
about the merits. It says only that, for any number of possible reasons, the Court didn’t want to 
review the lower-court ruling: ‘The variety of considerations that underlie denial of the writ 
counsels against according denials of certiorari any precedential value.”’) (internal citation 
omitted). 
 10 

legitimate) governmental interest. Jd. at § 49. 
 Defendants move for dismissal of this claim arguing that the Date Instruction imposes no 
more than the usual burdens on voting and that the burden is “justified by the State’s interests in 
protecting the integrity of its elections.” ECF No. 241, page 17. 
 Intervenor-Defendants and Plaintiffs’ agree that the Court should evaluate this claim 
under the Anderson-Burdick test!° which requires “a reviewing court to (1) determine the 
‘character and magnitude’ of the burden that the challenged law imposes on constitutional rights, 
and (2) apply the level of scrutiny corresponding to that burden.” Mazo v. New Jersey Sec. of 
State, 54 F.4" 124, 137 (3d Cir. Nov. 23, 2022) citing Burdick v. Takushi, 504 U.S. 428, 434 
(1992) and Anderson v. Celebreeze, 460 U.S. 780, 789 (1983). The Third Circuit explained this 
balancing test: 
 If the burden is severe, the court must apply exacting scrutiny and decide if the 
 law is narrowly tailored and advances a compelling state interest. But if the law 
 imposes only reasonable nondiscriminatory restrictions, the court may use 
 Anderson-Burdick’s sliding scale approach under which a State need only show 
 that its legitimate interests are sufficient to outweigh the limited burden. 

° The four County Boards of Elections take no position and offer no argument as to the First 
Amendment claim. See ECF No. 267. 
10 In determining whether to apply the Anderson-Burdick test, courts look to two principal 
characteristics: 
 First, the law must burden a relevant constitutional right, such as the right to vote 
 or the First Amendment rights of free expression and association. Second, the law 
 must primarily regulate the mechanics of the electoral process, as opposed to core 
 political speech. 
Mazo, 54 F.4™ 137. See also Trump for President v. Boockvar, 493 F.Supp.3d 331, 393 (W.D. 
Pa. Oct. 10, 2020) (“Anderson-Burdick is invoked where the government takes some direct 
action to burden or restrict a plaintiff's right to vote.”). 

 11 

7d. (internal quotation and citation omitted). Meanwhile, requirements that “impose a more-than- 
minimal but less-than-severe burden require a flexible analysis, weighing the burden on the 
plaintiffs against the state’s asserted interest and chosen means of pursuing it.” Daunt v. Benson, 
956 F.3d 396, 406-07 (6" Cir. 2020). 
 No matter what level of scrutiny should be used, the State’s interest must be defined. In 
this case, at this stage of the proceedings, only Plaintiffs and Intervenor-Defendants are arguing 
the present motion to dismiss. So then, on one side is Ms. Eakin, the Democratic Committees, 
and the American Federation of Teachers and on the other side is the Republican Committees. 
None of these parties are in a position to posit as to the State’s interest in the application of the 
Date Instruction — whether compelling, legitimate, or somewhere in between.!! Any argument in 
this regard is speculative. The Intervenor-Defendants’ argument that the State’s interest lies in 
“protecting the integrity of its elections” and that the Date Instruction serves to prevent “election 
fraud” are not connected to how providing a date on the outer envelope supports these State 
interests. At this early stage of the proceedings and without any evidentiary support, such 
assertions cannot base the dismissal of Plaintiffs’ claims. 
 Plaintiffs have stated a plausible claim that application of the Date Instruction to reject 
ballots is an undue burden on voters and serves no legitimate purpose. At this stage of the 
proceedings, this is sufficient. 
 An appropriate Order follows. 

 Commonwealth of Pennsylvania is not a party to this action and the County Boards of 
Elections have not weighed in on this claim. 
” The Intervenor-Defendants’ attachment of a criminal docket for forgery of a signature on a 
ballot is (1) beyond the scope of a motion to dismiss and (2) does not correlate a date 
requirement with prevention of fraud. 
 12